United States Court of Appeals,

Fifth Circuit.

No. 93-3835.

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff-Appellant Cross-Appellee,

v.

LOUISIANA OFFICE OF COMMUNITY SERVICES, et al., Defendants-Appellees Cross-Appellants,

Regina C. Fisher, Plaintiff-Movant-Appellant.

March 23, 1995.

Appeals from the United States District Court for the Eastern District of Louisiana.

Before DAVIS, BARKSDALE and STEWART, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge.

The Equal Employment Opportunity Commission ("EEOC"), on behalf of Regina Fisher, sued the Louisiana Department of Social Services, Office of Community Services ("LOCS"), alleging that LOCS violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621-34, when it twice failed to promote Ms. Fisher. After the jury returned a verdict for the EEOC, the district court granted LOCS' motion for judgment as a matter of law. Because we agree with the district court that the evidence is insufficient to support the jury's verdict, we affirm.

I.

Regina Fisher worked for LOCS in various capacities for over twenty-eight years. From 1954-1960, she worked as a caseworker in foster care. After doing family services work in Connecticut from 1961-1965, she returned to LOCS as a foster care supervisor. In

1970, Fisher became a supervisor in the Adoptions Petitions Unit, which reviewed adoption paperwork to ensure compliance with legal requirements. When that position was eliminated in August 1988, she became a supervisor in the Administrative Review Unit, which monitored child welfare cases to ensure that all necessary action had been taken in compliance with Public Law 96:272. More specifically, the law required that certain steps be taken at certain intervals, such as a case review every six months, and the Administrative Review personnel made sure the required steps were taken. Fisher had no responsibility for the quality of the work performed. Her unit simply verified that the requisite steps were taken and documented for the record.

In 1989, when Fisher was sixty-four-years old, LOCS decided to replace the Administrative Review Unit with a Quality Assurance Unit. LOCS proposed that the Quality Assurance Unit assume the functions of the Administrative Review Unit, but that it additionally monitor the quality of child welfare services provided throughout the region. In other words, the Quality Assurance Unit assumed all the duties of the Administrative Review Unit (which were essentially administrative) and additionally evaluated whether a particular case plan best fit the needs of the child.

In this second capacity, Quality Assurance personnel would monitor caseworkers in three "priority" programs—Family Services, Case Management, and Child Protection Investigation ("CPI"). Family Services provides counseling and other services to families needing assistance but whose problems do not require removal of the

2

child from the home. Case Management oversees all aspects of foster care. CPI investigates complaints of neglect and abuse. Caseworkers in each program work directly with children and their families.

Due to the increased skill level required of Quality Assurance Unit personnel, the Louisiana Department of Civil Service ("Civil Service") determined that the Quality Assurance positions were "new" positions, which had to be filled through a competitive promotion process. It classified Quality Assurance caseworkers as Social Services Specialists I ("Specialists") and supervisors as Social Service Supervisors I ("Supervisors I").

LOCS began to fill the Specialist positions in June 1989. During that time, Fisher remained in her former Administrative Review position—classified as a Social Services Counselor I ("Counselor I")—even as those she supervised were being promoted to Specialists. In December 1989, LOCS realized that under the Civil Service rules a Counselor I cannot supervise a Specialist. To comply with the rules, LOCS, in consultation with Civil Service, retroactively placed Fisher on a temporary assignment from June 5, 1989 through December 17, 1989, as a Supervisor I.[1]

In November 1989, LOCS interviewed applicants for three Supervisor I vacancies: one in Quality Assurance and two in Case Management. To qualify, each eligible candidate had to take a civil service exam. The nine applicants who received the top five

---

[1]The retroactive assignment occurred after Fisher was passed over to be the Quality Assurance Unit Supervisor in November.

3

scores on the exam were then evaluated by a panel comprised of five District Supervisors.[2] Each panelist assigned a point value from one to nine to each applicant based upon an "interview packet." This consisted of the applicant's application form, a short narrative written by the applicant describing the applicant's knowledge of Child Protection and particular qualifications for the job, a summary of the three references, and notes taken at the interview. The panel then recommended the three applicants with the highest composite scores to Rebecca Corbello, Regional Manager. Ms. Corbello then approved and forwarded the recommendations to Shirley Goodwin, Division Director of Child Welfare Field Services, who made the final decision to promote the selectees.

The selectees were Donna Leavitt, age 52, Priscilla Brown, age 43, and Carol Mackey, age 38. Leavitt eventually filled the Quality Assurance position, and Brown and Mackey filled the Case Management positions. Fisher had the fourth highest score. After she was not promoted, Fisher filed a charge with the EEOC alleging age discrimination.

In March 1990, LOCS reconvened the panel to fill two additional Supervisor I vacancies for CPI and Case Management, both within Janice Briscoe's sub-region. The panel members were the same, with the exception of Carolyn Kramer. The panel did not

---

[2]The panel members were James Bordelon, Carolyn Kramer, Joe Putnam, Freida Neville and Diane Richards. All but Kramer were supervisors within the sub-region managed by Janice Briscoe. Kramer was in the sub-region managed by Danny Curtis. The Quality Assurance position was in Curtis' sub-region, while the other two positions were in Briscoe's sub-region.

reinterview the applicants who had been interviewed in November; they relied on their November interview packets. The panel recommended the four highest scoring applicants:[3] Alvia Brown, David Zumalt, Susan Hitzman and James Mento, all of whom were younger than Fisher. The panel also indicated which position the selectees should fill. This time Fisher ranked eighth on the list, scoring lower than four applicants she had outscored in November. Goodwin eventually selected Brown and Zumalt for Case Management and CPI, respectively.

Fisher filed another charge with the EEOC, alleging that the second promotion denial was because of age and in retaliation for filing the first EEOC charge. Shortly thereafter the EEOC filed this suit alleging age discrimination and retaliation. At trial, LOCS contended that it had not promoted Fisher because the selectees were more qualified for the positions. The jury rendered a verdict for the EEOC, finding that both promotion denials were age related and that the second denial was willful but not retaliatory. LOCS reurged its previously filed motion for judgment as a matter of law or, in the alternative, for a new trial. The district court granted the motion for judgment as a matter of law, holding that the evidence was insufficient to permit a finding that the reason proffered by LOCS for not promoting Fisher was pretextual. The district court was therefore persuaded that the record evidence failed to show that LOCS' personnel decision not to

---

[3]The record reflects some confusion over the number of slots available. It appears that at one point LOCS contemplated filling four positions.

promote Fisher was because of her age.  The EEOC and Fisher separately appeal that judgment.

## II.

As an initial matter, we address LOCS' motion to dismiss Fisher's appeal.  LOCS concedes the EEOC's right to appeal, but contests Fisher's right to appeal separately since she was not a party to the proceedings below.  A person who is not a party to the proceedings below generally cannot appeal the court's judgment. *See EEOC v. Pan Am. World Airways, Inc.,* 897 F.2d 1499, 1504 (9th Cir.), *cert. denied sub nom. Keith v. EEOC,* 498 U.S. 815, 111 S.Ct. 55, 112 L.Ed.2d 31 (1990).  However, courts have granted exceptions where the non-parties actually participated in the proceedings below, the equities weigh in favor of hearing the appeal, and the non-parties have a personal stake in the outcome.  See *id; see also Binker v. Commonwealth of Pa.,* 977 F.2d 738 (3d Cir.1992) (allowing non-party employees to appeal approval of settlement agreement negotiated by EEOC where employees were involved in the negotiations and where settlement formula was not favorable to employees); *EEOC v. West La. Health Servs., Inc.,* 959 F.2d 1277 (5th Cir.1992) (allowing non-party appeal where EEOC had not pursued appeal in its representative capacity).

An exception is not warranted in this case.  Fisher dismissed her private action when the EEOC filed suit.  Neither Fisher nor her attorney pled, intervened or otherwise participated in the proceedings below.  Nor does Fisher contend that her arguments overlap or are in tension with the EEOC's arguments.  Because we

6

conclude that the EEOC adequately represented Fisher below and continues to do so on appeal, we dismiss Fisher's appeal.

## III.

### A.

We review the district court's grant of judgment as a matter of law **de novo.** Accordingly, we can affirm only

> [i]f the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict.... On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied, and the case submitted to the jury. A mere scintilla is insufficient to present a question for the jury.

*Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969) (en banc). In this case, we must determine whether the record contains evidence which could lead a reasonable trier of fact to conclude that LOCS did not promote Fisher because of age. *See Molnar v. Ebasco Constructors, Inc.,* 986 F.2d 115, 117 (5th Cir.1993). In doing so, we must view the evidence in the light most favorable to and draw all inferences in favor of the EEOC. *Boeing,* 411 F.2d at 374.

### B.

The ADEA makes it unlawful for employers "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a). In the absence of direct proof of discrimination, the plaintiff in an age discrimination case must follow the three-step

7

burden-shifting framework laid out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).  The plaintiff first must establish a prima facie case of discrimination.  The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action.  If the employer does so, the plaintiff then bears the burden of proving that the articulated reason is untrue and was given as a pretext for discrimination. *Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082, 1087 (5th Cir.1994). "[An employer's] reason cannot be proved to be "a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks,* --- U.S. ----, ----, 113 S.Ct. 2742, 2752, 125 L.Ed.2d 407 (1993).

The parties stipulated that the EEOC made out a **prima facie** case:  Fisher was over 40 years of age, was qualified for the positions, and was older than the selectees.  The parties also stipulated that LOCS offered a nondiscriminatory reason for its actions:  Fisher was not as qualified as the applicants selected for promotion.  The critical issue for the jury was whether LOCS' explanation was true, as it contended, or pretextual, as the EEOC contended.  As stated above, the jury resolved the question in favor of the EEOC, but the district court granted judgment as a matter of law to LOCS because the EEOC failed to produce sufficient evidence to show that LOCS' explanation for not promoting Fisher

8

was false. The EEOC argues on appeal that it did produce sufficient evidence from which a reasonable jury could infer that LOCS' proffered explanation was pretextual. Our task therefore is to determine whether a reasonable jury could have found that LOCS' explanation was pretextual.

In determining whether the employer's stated reason is false, the trier of fact may not disregard the defendant's explanation without countervailing evidence that it was not the real reason for the discharge. *Elliott v. Group Medical & Surgical Serv.,* 714 F.2d 556, 562 (5th Cir.1983), *cert. denied,* 467 U.S. 1215, 104 S.Ct. 2658, 81 L.Ed.2d 364 (1984). Evidence that the proffered reason is unworthy of credence must be enough to support a reasonable inference that the proffered reason is false; a mere shadow of a doubt is insufficient. *Cf. Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (noting that non-moving party must show more than a "metaphysical doubt"). After thoroughly reviewing the record, we agree with the district court that the EEOC failed to produce sufficient evidence to allow a jury to conclude that LOCS' explanation was pretextual.

All panel members testified at trial that they rated the applicants based upon each applicant's experience in the three priority programs, qualifications, past performance, references and interviews. They testified that they ranked Fisher as they did because they felt that the selectees were better suited or better qualified for the positions. Specifically, they testified that

9

Fisher, by comparison to the selectees, had less experience in the three priority programs, did not present herself as well during the interview process, and received more negative references from former supervisors. LOCS emphasized that it have never contended that Fisher was not qualified for the position nor that she was a poor employee, but rather that out of the applicant pool, Fisher was not as qualified as the selectees.

Every LOCS representative agreed that in evaluating the applicants the most important factor was knowledge of the three priority programs; more particularly, they considered recent hands-on experience in the three priority programs to be critically important. The panel members explained that experience in and knowledge of the three areas was necessary because supervisors might be transferred during their tenure from one program to another.

Although the vacancies were supervisory positions, the panelists testified that earlier general supervisory experience was not a particularly important factor unless it was in a priority program. The panel also considered the applicants' references, but did not consider them to be an overwhelming factor. Shirley Goodwin, Division Director, testified that the panel was instructed to evaluate each applicant for all the vacant positions. In other words, the panel did not evaluate applicants based on individual qualifications for a particular vacancy. Rather, it evaluated the applicants based on their overall qualifications for all of the vacancies.

The EEOC argues first that it presented evidence that Fisher was clearly better qualified than the selectees. A fact finder can infer pretext if it finds that the employee was "clearly better qualified" (as opposed to merely better or as qualified) than the employees who are selected. *See, e.g., Odom v. Frank*, 3 F.3d 839, 845-46 (5th Cir.1993); *Walther v. Lone Star Gas Co.*, 952 F.2d 119, 123 (5th Cir.1992); *Thornbrough v. Columbus & Greenville R. Co.*, 760 F.2d 633, 647 (5th Cir.1985).

The evidence does not support the EEOC's argument. With respect to the November selectees, the evidence showed that Donna Leavitt had recent experience in all three priority programs. Leavitt's references highly recommended her as an excellent, cooperative, committed worker who related well to clients and co-workers. The one criticism was that she needed to work on managing her paperwork and meeting deadlines. Every panelist gave Leavitt the highest score.

Priscilla Brown had recent experience in two priority programs,[4] having spent the last two and a half years in Case Management and twelve years prior to that in CPI. Her references were also positive, emphasizing her dedication, knowledge, experience, teamwork and organizational skills. The references expressed concern over a speech problem, but indicated that Brown

---

[4]The record reflects that Brown actually had experience in all three priority programs, as she spent a month in Family Services in 1987. However, this information did not appear on the form submitted to the panel.

had volunteered to undergo speech therapy and had made "tremendous" improvements.

Carol Mackey had recent experience in two priority programs—Case Management and Family Services. Although Mackey was never assigned to CPI, she specialized in sexual abuse. Mackey's references were uniformly positive, highlighting her client relationships, team spirit, responsibility and organizational skills.

Although Fisher also had prior experience in two priority programs—Case Management and Family Services—she had spent the last nineteen years in nonpriority administrative positions.[5] The narrative that she submitted to the panel confessed that she knew little about CPI and was primarily interested in the Quality Assurance position. Fisher's references were comparatively negative. The most favorable reference, Carolyn Kramer, highlighted Fisher's reliability, dedication and experience in helping set up the Quality Assurance Unit. Another reference referred to Fisher's "detail and procedure skills" and recommended her for a Quality Assurance, Family Services or, possibly, Case Management position. However, that reference noted that Fisher was bossy and unyielding and would be too "ivory tower" for CPI. The third reference was highly critical, stating that she would not

---

[5]The EEOC suggests that the panel's discounting of Fisher's priority experience because it was nineteen-years old itself suggests age discrimination. However, the EEOC presented no evidence indicating that LOCS' employees progressed from working in priority programs to working in nonpriority, procedural jobs. In fact, after Fisher did not receive the first promotion, she was placed in Case Management.

promote Fisher unless she were the last person available.[6]

As to the March selectees, Alvia Brown had recent experience in two priority programs—Case Management for ten years and CPI for two years. Brown's references were uniformly positive, focusing on her organizational skills and cooperation. David Zumalt had prior experience in at least two priority programs, most recently in CPI for four years. Prior to that he was in Case Management for six years. He also had prior experience in other child welfare organizations in areas analogous to all three priority programs. His references were also uniformly positive, focusing on his competence and meticulousness.

This evidence does not demonstrate that Fisher was clearly better qualified than the applicants selected for the contested positions. At most, a fact finder could infer that Fisher was *as qualified* for the positions as the selectees. As this court cautioned in *Odom,* however, the judicial system is

> not as well suited by training and experience to evaluate qualifications for high level promotion in other disciplines as are those persons who have trained and worked for years in that field of endeavor for which the applications under consideration are being evaluated.
>
> Therefore, unless disparities in curricula vitae are so apparent as virtually to jump off the page and slap us in the face, we judges should be reluctant to substitute our views for those of the individuals charged with the evaluation duty by virtue of their own years of experience and expertise in

---

[6]Ms. Fisher neglected to include as a reference one of her most recent supervisors, Cheryl Campos. Ms. Kramer noticed the oversight and supplemented Fisher's file with Ms. Campos' reference. Campos stated that Fisher was a good supervisor who was very thorough and met deadlines. She especially recommended Fisher for Quality Assurance, but noted that the demands of CPI might be too great.

the field in question.

3 F.3d at 847. Fisher's qualifications are not so superior to those of the selectees to allow an inference of pretext.

The EEOC argues next that, even if Fisher is not clearly better qualified than the selectees under LOCS' stated promotion standards, those standards constitute a post-hoc rationalization for why Fisher was not promoted. At trial, the EEOC attempted to cast doubt on LOCS' explanation for its decision by arguing that general supervisory and Administrative Review experience were more relevant to the positions than priority program experience. The record reveals that Fisher did have substantially more supervisory and compliance experience than the selectees. But we decline to substitute our judgment for the employer in evaluating what types of experience are most valuable for an employee in the new position in the absence of proof that the standards were not consistently applied or were so irrational or idiosyncratic as to suggest a cover-up. *See Elliott,* 714 F.2d at 566-67; *see also Little v. Republic Refining Co., Ltd.,* 924 F.2d 93, 97 (5th Cir.1991); *Laurence v. Chevron, U.S.A., Inc.,* 885 F.2d 280, 285 (5th Cir.1989); *Bienkowski v. American Airlines, Inc.,* 851 F.2d 1503, 1507-08 (5th Cir.1988).

The EEOC offered no evidence to show that LOCS applied the standards inconsistently or that the standards were irrational. First, as to supervisory experience, the EEOC attempted to show LOCS' inconsistency in applying its standards by pointing to various references in the interview packets to the selectees'

14

supervisory experience. But this evidence reveals nothing except that LOCS *considered* supervisory experience in its decision, a point LOCS does not dispute. It does not, however, undercut LOCS' claim that such experience was less important to the promotion decisions than broad priority program experience. Moreover, we cannot say that it is irrational for an employer to give less weight to general supervisory experience than actual field experience where field experience is relevant to the position.

Second, while Administrative Review experience would be helpful in performing the Quality Assurance functions, such experience would have little, if any, benefit to a person in one of the other positions. As mentioned, the panel was instructed to evaluate each candidate for all the positions. But even if we consider the failure to promote Fisher to the Quality Assurance position under LOCS' articulated standard, the decision was a rational one. The uncontradicted evidence showed that the Quality Assurance position required greater skills than the Administrative Review position. Fisher's primary function in Administrative Review was to ensure that the necessary steps were taken in each child welfare case in compliance with Public Law 96:272 and that this action was documented. However, the Quality Assurance Unit also required staff to make subjective judgments about the quality of service provided in individual cases.[7] As Danny Curtis,

---

[7]The EEOC makes much of the fact that Fisher technically supervised Quality Assurance caseworkers for six months. However, it offered no evidence to refute LOCS' testimony that the Quality Assurance program was not implemented in full until May 1990, nor did it show that Fisher had performed any

15

Assistant Regional Manager, testified at trial, Administrative Review involved "a very simple process or procedural thing" to ensure that the required steps were taken. According to Curtis, Quality Assurance, in contrast,

> involves a complete review of the case to determine if certain policy issues, things that we have decided are important to be received by the children, that we're providing these.... They check for specific case planning and things; such as, not only is there a case plan there, but does the case plan meet the needs of the family.

Shirley Goodwin, Division Director, also testified that the Quality Assurance position required a greater degree of responsibility because of the subjective judgments the staff was required to make. According to Ms. Goodwin, this was the main reason that the Quality Assurance supervisor position was upgraded to Supervisor I status. The EEOC presented no evidence to refute this testimony. Thus, while Fisher's prior Administrative Review experience does have some relevance to the Quality Assurance position, it is plausible for LOCS to have concluded that training someone in administrative compliance is easier than giving them the experience needed to make subjective judgments in individual cases.

The EEOC argues next that the structure of the promotion process was a sham to prevent Fisher from receiving a promotion. To support this theory, the EEOC attempts to highlight what it perceives as implausibilities or inconsistencies in the promotion process. First, the EEOC contends that the decision not to hire a person for Quality Assurance separately from the other, less

non-procedural duties.

16

administrative positions suggests an intent to disadvantage Fisher. The testimony revealed that LOCS originally planned to fill only the Quality Assurance position. Pursuant to the Civil Service Rules, LOCS had to obtain approval from Civil Service to fill the position and request Civil Service to certify a list of eligible applicants. The evidence at trial revealed that certification was a lengthy and burdensome process. While certification was pending for the Quality Assurance position, two other Supervisor I positions opened. To expedite matters, LOCS sought approval to fill all three positions from the same applicant list. The EEOC offered no evidence to refute LOCS' explanation that this was a simply a time-saving measure to avoid the lengthy certification process for the other two positions.

Second, the EEOC argues that LOCS' explanation that each selectee needed experience in all three priority programs due to the possibility of transfer is not credible. It offered evidence that no one had been transferred in the three and a half years since the promotions and that the agency had a low history of transfers. However, the fact that the likelihood of transfer was low does not render LOCS' consideration of that possibility implausible. Moreover, while no one was transferred in the three years since the promotions, record evidence reveals that promotions to higher levels of supervision can expand the job duties to include other programs. For example, when David Zumalt replaced Joe Putnam as a District Supervisor, his duties expanded to include Family Services.

17

Third, the EEOC contends that the exclusion of Carolyn Kramer, Fisher's strongest supporter in November, from the March panel also suggests an intent to discriminate against Fisher. However, the uncontradicted testimony, including Kramer's, indicated that she was excluded because none of the March vacancies were in her sub-region. Moreover, there was no evidence that Kramer's absence would have made a difference, given the other panelists' low ratings of Fisher.

Fourth, the EEOC argues that Fisher's drop from fourth place in November to eighth place in March indicates that the true motivating factor was age. However, the undisputed testimony revealed that the March panel started with a clean slate, evaluating each applicant anew. Quite a few scores came out differently, with some applicants scoring higher than they did in November, and others scoring lower. Significantly, Fisher was not the only candidate to score lower in March than in November. Any possible inference that can be drawn from this disparity bears, if anything, on Fisher's retaliation claim, which the jury rejected.

Fifth, the EEOC argues that the second panel's recommendation of four applicants instead of two casts doubt on its nondiscriminatory explanation, because had the November panel recommended extra applicants, Fisher would have been on the list. The panel members testified that their decision to recommend four people stemmed from confusion over the number of vacancies and concern about a possible hiring freeze. The EEOC again did not discredit this explanation nor suggest that similar considerations

18

were present in November.

Finally, the EEOC argues that the March panel's recommendation of specific slots for the selectees casts doubt on its claim that individual qualifications for particular positions were not part of the ranking. The panel testified that it ranked the applicants based on their overall qualifications and only then suggested assignments. Again, the EEOC offered no evidence to discredit this testimony.

LOCS offered a facially benign explanation for each of the EEOC's arguments. Where the plaintiff has offered no evidence to rebut the employer's facially benign explanations, no inference of discrimination can be drawn. *See Odom,* 3 F.3d at 848.

IV.

In sum, we conclude that the EEOC failed to produce evidence from which a reasonable jury could infer that the reason LOCS gave for its decision not to promote Fisher was pretextual. It offered no evidence that LOCS' stated reason was not the true one, such as that younger applicants were treated differently or that the explanation given was so implausible as to be a cover-up. Rather, the only evidence is the EEOC's own speculation that age motivated the decision not to promote Fisher. We have consistently held that an employee's subjective belief of discrimination, however genuine, cannot be the basis of judicial relief. *See Portis v. First Nat'l Bank of New Albany, Miss.,* 34 F.3d 325, 329 (5th Cir.1994); *Elliott,* 714 F.2d at 567.

The overwhelming evidence showed that LOCS did not promote

19

Fisher because it believed that she was not as qualified for the positions as the selectees.  While we or the jury might have made a different employment decision, we should not substitute our judgment of an employee's qualifications for the employer's in the absence of proof that the employer's nondiscriminatory reasons are not genuine.  We are persuaded that this is precisely what the jury did here.  As this court stated in *Bienkowski:*

> The ADEA was not intended to be a vehicle for judicial second-guessing of employment decisions nor was it intended to transform the courts into personnel managers.  The ADEA cannot protect older employees from erroneous or even arbitrary personnel decisions, but only from decisions which are unlawfully motivated.

851 F.2d at 1507-08.  The district court therefore correctly granted judgment as a matter of law in favor of LOCS.[8]

AFFIRMED.

---

[8]In view of this decision, LOCS' cross-appeal from the district court's denial of its motion for a new trial is moot.

20