Mathews K. ABRAHAM, Plaintiff,

v.

COMMUNITY HOSPITAL OF MES-
QUITE, INC., d/b/a Mesquite Communi-
ty Hospital and Manor Care, Inc., Defen-
dants.

No. 3:96–CV–3462–T.

United States District Court,
N.D. Texas,
Dallas Division.

Dec. 19, 1997.

Scott A Scher, Scher & Miller, Dallas, TX, for plaintiff.

Arlene Switzer Steinfield, Carolyn Ritchie, Thompson & Knight, Dallas, TX, for defendants.

### ORDER GRANTING DEFENDANTS MOTION FOR SUMMARY JUDGMENT

MALONEY, District Judge.

Before the Court is Defendants' Motion for Summary Judgment, filed on August 29, 1997. The motion is opposed. After consideration, the Court is of the opinion that the motion should be granted.

This is an employment discrimination suit. Plaintiff Mathews K. Abraham alleges that his employer, Defendants Mesquite Community Hospital and Manor Care, Inc. (the hospital),[1] failed to promote him to a managerial position. Plaintiff brings claims against Defendants for age and national origin discrimination under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, and 42 U.S.C. § 1981. Defendants now move for summary judgment on Plaintiff's claims. The Court addresses the parties' objections to the evidence submitted on summary judgment and their motions to strike by separate order.

Summary judgment should be entered only where the record establishes that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The movant bears the burden of establishing the propriety of summary judgment. *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir. 1986).

Once a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law will identify what facts are material. *Id.* at 248, 106 S.Ct. 2505. A dispute as to a material fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

■■■ Where the evidence of discrimination is indirect or circumstantial, as here, the plaintiff must first state a prima facie case for age and national origin discrimination. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). If he succeeds, then the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the challenged action. *Id.* Once a defendant has supported the proffered reason with sufficient evidence, the burden reverts to the plaintiff to prove that the proffered reason is mere pretext for discrimination. *Id.* at 515, 113 S.Ct. 2742.

■■■ To show pretext for discrimination, a plaintiff must demonstrate *"both* that the reasons were false, *and* that [age or national origin] discrimination was the real reason." *Id.* (emphasis in original); *see also Rhodes v. Guiberson Oil Tools,* 75 F.3d 989, 993 (5th Cir.1996) (en banc). In tandem with the prima facie case, the evidence allowing rejection of the employer's proffered reason will often permit a finding of discrimination without additional evidence. *Rhodes,* 75 F.3d at

---

1. The exact relationship between Defendants Mesquite Community Hospital and Manor Care, Inc., is unclear. Plaintiff asserts that Manor Care is the alter ego of Mesquite Community Hospital. For purposes of this motion, the Court refers to them together as the hospital or Defendants.

994. Accordingly, a plaintiff can avoid summary judgment if the evidence, taken as a whole: (1) creates a fact issue as to whether each of a defendant's stated reasons was what actually motivated the defendant; and (2) creates a reasonable inference that age or national origin discrimination was a determinative factor in the actions of which the plaintiff complains. *Id.* at 993.

Plaintiff, an Asian–Indian who was 55 at the time of the incident in question, is a registered respiratory therapist. Plaintiff began working at the hospital as a respiratory therapist on November 14, 1988. At that time, however, his employer was not the hospital, but an independently owned entity called Pulmonary Care, Inc., which provided cardiopulmonary care services to the hospital pursuant to a contract for services.[2] This arrangement continued until July 31, 1995, on which date the hospital terminated its contract with Pulmonary Care and hired its staff directly. Thus, Plaintiff became an employee of the hospital in its cardiopulmonary unit on August 1, 1995.

In October of 1995, the hospital posted an opening for the position of director of the cardiopulmonary unit. Plaintiff applied for the position. Pam Johnson, Assistant Administrator of the hospital, conducted the initial search to fill the job post. Johnson considered four candidates, including Plaintiff, and she recommended Andy Laurence, a white male who, at the time, was under the age of 40. Raymond De Blasi, the hospital's Chief Executive Officer, approved Johnson's recommendation and hired Laurence as director. Plaintiff claims that he was as qualified as Laurence for the position and that the hospital's failure to promote him to the position was due to age and national origin discrimination.

█ To establish a prima facie case for age or national origin discrimination on the facts here, Plaintiff must show that (1) he was a member of a protected class; (2) he was qualified for the position; (3) he did not get the position; and (4) Defendants filled the position with someone outside his protected class. *See Grimes v. Tx. Dep't Mental*

*Health and Mental Retardation,* 102 F.3d 137, 140 (5th Cir.1996); *Jones v. Flagship International,* 793 F.2d 714, 724 (5th Cir. 1986). Defendants stipulate to every element but the second; Defendants argue that Plaintiff was not qualified for the directorship of the cardiopulmonary unit because he did not have sufficient managerial experience. The Court will assume for purposes of determining the instant summary judgment motion that Plaintiff was minimally qualified for the position and has, therefore, met his prima facie case.

█ Assuming he was minimally qualified for the position, Defendants argue, the candidate chosen was clearly better qualified than Plaintiff. Defendants support their statement with evidence. As Texas is an at-will employment state, *Federal Express Corp. v. Dutschmann,* 846 S.W.2d 282, 283 (Tex.1993), Defendants may refuse to promote an employee for any reason or no reason, so long as it is not for a discriminatory reason. The Court concludes that Defendants have articulated a legitimate, nondiscriminatory reason for its failure to promote Plaintiff to the position of director of the cardiopulmonary unit.

Plaintiff must now bring forth evidence to rebut Defendants' reason as pretext for age or national origin discrimination. To that end, Plaintiff offers his declaration, his resume, Defendants' applicant appraisal form of Plaintiff, and his performance evaluations from 1988 to 1996. Plaintiff asserts that this evidence shows that he was more than qualified for the position of director according to the qualifications which Defendants posted and advertised and, therefore, Defendants' failure to promote him is clearly evidence of discrimination. Plaintiff also argues in his brief that he need show nothing more on summary judgment than that Defendants' stated reasons for the promotion of Laurence over Plaintiff are merely pretext, such that he does not have to provide evidence that Defendants' true reasons for passing him over were because of his age and national origin. The Court concludes, however, that Plaintiff has failed to show even pretext.

**2.** Saqr A. Saqr owned Pulmonary Care, Inc.

Defendants state that they sought someone with significant managerial experience, as the job duties of the director include, among other things, hiring and supervising staff; creating job descriptions and personnel policies; developing the schedule of charges for the unit's services; developing procedure and policy manuals for the unit's staff; and demonstrating to Joint Commission on Accreditation of Healthcare Organizations (JCAHO) surveyors that the staff is competent and that patients are receiving appropriate care.[3] (Johnson Decl. ¶¶ 9–10.) As the hospital had scheduled its accreditation survey for January of 1996, this last factor was very important to Defendants in selecting a director in October of 1995. (De Blasi Decl. ¶ 9.) In fact, the hospital's CEO states, "I considered it essential that the new director have management experience and experience with the JCAHO surveys and compliance reviews." *Id.*

Based on information which Laurence provided, De Blasi and Johnson believed Laurence's qualifications for the position to be the following: he had spent the previous 18 months hiring, supervising, disciplining, and training the staffs of Vencor Hospital's respiratory therapy and radiology departments; he had prepared department budgets and developed policies and procedures for the department; he had experience with JCAHO surveys and was familiar with federal and state regulations applicable to the cardiopulmonary unit; and he was familiar with the complex rules related to reimbursement of medical costs under Medicare, Medicaid, and private insurance. (Johnson Decl. ¶¶ 14, 19; De Blasi Decl. ¶ 12.) Both De Blasi and Johnson agreed that of the four candidates who applied for the director's position, Laurence was the most qualified, and Defendants hired Laurence on October 30, 1995. (De Blasi Decl. ¶ 12; Johnson Decl. ¶ 20.)

On the other hand, Plaintiff's duties as an experienced registered respiratory therapist, according to Johnson's beliefs, did not include recent supervisory or management responsibilities, nor had he ever been responsible for JCAHO surveys and other regulatory agency compliance matters. (Johnson Decl. ¶ 18.) While Plaintiff was more experienced as a respiratory therapist than Laurence, Johnson did not believe that this added to Plaintiff's qualifications for the position of director because this managerial job required little patient care. *Id.* Plaintiff, however, believes that the only requirement for a competent director of the cardiopulmonary unit is to be a competent registered respiratory therapist, even though the former does patient care and the latter works in an office. (Pl.'s Dep. at 227.) Plaintiff's own testimony regarding his abilities and experience confirms that, as far as Johnson or De Blasi knew, Plaintiff was not *clearly* more qualified for the director's position than Laurence.

Plaintiff himself admits that, from November of 1988 until July 31, 1995, his job at the hospital involved no managerial or supervisory responsibilities. (Pl.'s Dep. at 80–81.) He also admits that during this period he was not responsible for any budgetary issues and never prepared an operating budget. *Id.* at 81, 143. Plaintiff never had responsibility for hiring and firing during this time or for making decisions with Saqr, Pulmonary Care's owner, about the operation of the cardiopulmonary department. *Id.* at 83. Furthermore, management never consulted with Plaintiff about operational decisions at the hospital. *Id.*

Additionally, Plaintiff had never had experience in preparing written responses to a JCAHO survey, as Saqr had always prepared them. (Pl.'s Dep. at 142.) He never had any involvement in medical cost reimbursements from insurance companies. *Id.* at 152–153. Plaintiff never worked as a director of a cardiopulmonary department at a hospital. *Id.* at 143. Finally, none of Plaintiff's performance evaluations indicate that his job duties as a respiratory therapist included those which Defendants sought in the person to fill the director's post. (Pl.'s Resp. to Mot. for Summ. Jmt., Exh. C.)

Plaintiff admits that Johnson told him that she chose Laurence because Plaintiff did not

---

**3.** The JCAHO investigates and accredits medical facilities. According to Defendants, accreditation is crucial to a hospital's financial success because insurance companies seldom do business with unaccredited hospitals. (De Blasi Decl. ¶ 6.)

have the right experience with JCAHO surveys or with hospital budgeting. (Pl.'s Dep. at 153.) Plaintiff also concedes that Johnson told him that Laurence had management experience in a recent position requiring both budgeting and surveying responsibilities. *Id.* at 154–155. Plaintiff further admits that Johnson never made any comments indicating that Plaintiff's age or national origin played a part in the decision not to promote him. *Id.* at 171. In fact, both De Blasi and Johnson were over 50 at the time of the decision to hire Laurence. (De. Blasi's Decl. ¶ 16; Johnson Decl. ¶ 23.) Plaintiff contends, nevertheless, that he was passed over because of his age or national origin.

■■■■ Plaintiff claims that, because he was better qualified than Laurence for the post of director, his failure to win the promotion must be pretext for age or national origin discrimination. When a plaintiff makes such a claim, he must demonstrate that his qualifications show him *clearly better qualified* than the selectee for the position in question, otherwise no inference of pretext for discrimination arises. *See E.E.O.C. v. Louisiana Office of Community Servs.*, 47 F.3d 1438, 1444–45 (5th Cir.1995); *Odom v. Frank*, 3 F.3d 839, 845–46 (5th Cir.1993). The Court has thoroughly examined the evidence in the record and concludes that Plaintiff has failed to show himself clearly better qualified than Laurence. In fact, Plaintiff affirmed at his deposition that he does not consider himself *clearly* better qualified for the position. (Pl.'s Dep. at 159, 197.) As such, he has failed to raise a fact issue as to whether Defendants' reason for not promoting him is mere pretext for discrimination.

■■■■ Plaintiff also attempts to prove Defendants discriminated against him by way of a comment concerning race which Saqr, owner of Pulmonary Care, made to him before Defendants became Plaintiff's employer. By

separate order, however, this Court struck the comment as hearsay.[4]

■■■■ Plaintiff also points to the percentage of Asian–Indian employees working at the hospital and asserts that not one of them is a director or in a management position. Plaintiff, however, offers no evidence of the racial or ethnic composition of the hospital workforce, other than his own speculation. Defendants nevertheless respond that Plaintiff overlooks the fact that the hospital, under De Blasi, has department directors of several different national origins, including Philippine, Hispanic and Chinese. The Court concludes that, even if true, Plaintiff's assertion is not probative of Plaintiff's national origin discrimination claim. Plaintiff has not brought forth any evidence which raises a fact question that Defendants may have discriminated against him because of his national origin.[5] Plaintiff's belief that he has been discriminated against, no matter how sincerely held, is insufficient to support a discrimination claim. *See Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 434 (5th Cir. 1995).

The Court has reviewed all of Plaintiff's evidence and can find nothing which indicates either that Defendants' reason for denying him the promotion was false, or that the true reason was because of his age or his national origin. Because Plaintiff's evidence does not overcome or call into question Defendants' stated reason for its failure to promote him, Plaintiff has failed in his burden on summary judgment. The Court concludes that no reasonable juror could find that Defendants denied Plaintiff the promotion because of his age or national origin. As such, the Court grants summary judgment on his claims relating to Defendants' failure to promote him to director of the cardiopulmonary unit.

### Claim Relating to Coordinator Position

Plaintiff also claims that Defendants earlier discriminated against him when, in May of

---

4. Even if it were admissible, it was not made by either of the decisionmakers here, Johnson and De Blasi, and it was spoken five months before Plaintiff applied for the director's position. As such, the comment is a stray remark incapable of supporting an inference of national origin discrimination. *See e.g. Guthrie v. Tifco Indus.*, 941 F.2d 374, 378–79 (5th Cir.1991).

5. Plaintiff offers no evidence whatsoever that Defendant discriminated against him because of his age. In fact, it appears Plaintiff may have abandoned the claim.

1995, he was passed over for the position of coordinator in the cardiopulmonary unit of the hospital in favor of Lori Kroening, a white female younger than Plaintiff.[6] This incident, however, occurred before the hospital cancelled its contract with Pulmonary Care and hired its staff. Consequently, Plaintiff was still an employee of Pulmonary Care, rather than of Defendants, at the time of this alleged discrimination. Plaintiff filed an Equal Opportunity Employment Commission charge against Saqr, Pulmonary Care's owner, regarding this incident, then later withdrew it. Plaintiff now seeks to hold Defendants liable for Pulmonary Care's alleged discriminatory failure to promote him.

Defendants argue that, as a matter of law, they cannot be held vicariously liable for Pulmonary Care's alleged discriminatory actions. First, assert Defendants, Title VII and the ADEA apply only to an employer, but Plaintiff admits that Defendants were not his employer in May of 1995. Defendants claim that they took no part in the decision to appoint Kroening as coordinator and, therefore, cannot be held liable for any discrimination in that appointment.

Defendants also argue that Plaintiff's claims regarding the coordinator position are not properly before the Court because they are outside the scope of the only EEOC charge he filed against Defendants. Defendants explain that Plaintiff's first EEOC charge was filed against Pulmonary Care for failure to promote him to the coordinator position. Defendants state that this charge did· not name Defendants as respondents, and the EEOC did not include Defendant in its conciliation efforts, if any, nor did it seek information from Defendants during investigation of the charge. It is undisputed that Plaintiff voluntarily dropped the discrimination charge against Pulmonary Care on May 22, 1995.

Plaintiff responds first that Defendants were responsible for setting policy for and supervising the cardiopulmonary unit of the hospital, despite the fact that it was staffed with Pulmonary Care employees. As such,

argues Plaintiff, Defendants should be liable for Pulmonary Care's failure to promote him.

■ The Court has reviewed Plaintiff's evidence, as well as Defendants', and concludes that Plaintiff has no evidence—aside from his own speculation—that, before August 1, 1995, Defendants made personnel decisions for Pulmonary Care employees. Plaintiff's deposition testimony supports this conclusion:

Q. All right. You have no information to support any kind of claim that Mr. De Blasi was or anyone else at the Community Hospital of Mesquite was in any way involved in the decision regarding the coordinator position, do you?

A. I don't have any written support.

Q. Do you have any support whatsoever, any facts?

A. That's my belief is the fact.

(Pl.'s Dep. at 98.) Plaintiff further testified that neither De Blasi nor Johnson ever made any representations about the coordinator position to Plaintiff nor did they discuss with him withdrawing his EEOC charge against Saqr, owner of Pulmonary Care. *Id.* at 105. De Blasi and Johnson both confirm this, and they state that they had nothing to do with selecting a person to fill the coordinator position. (De Blasi Decl. ¶ 4; Johnson Decl. ¶ 5.)

■ Plaintiff's second problem with attempting to hold Defendants liable for Pulmonary Care's failure to promote Plaintiff to the coordinator position is that he did not name Defendants in this first EEOC charge. (Pl.'s Dep. at 92–93.) Furthermore, because Plaintiff withdrew the charge in May of 1995 shortly after he filed it, he presumably never received his right to sue letter, which is a prerequisite to filing suit against a defendant under Title VII and the ADEA. *See Reeves v. MCI Telecommunications Corp.,* 909 F.2d 144, 145 (5th Cir.1990). While Plaintiff's second EEOC charge names Defendants, the only discrimination claim listed there is the failure to promote Plaintiff to the position of

---

**6.** It is undisputed that Plaintiff never actually applied for the position because he had no knowledge of it before Pulmonary Care made the announcement that it had filled the coordinator position.

director of the cardiopulmonary unit in October of 1995.

Exhausting administrative remedies is a prerequisite to filing a judicial complaint in a Title VII case. *See Tolbert v. United States,* 916 F.2d 245, 247 (5th Cir. 1990). Furthermore, a plaintiff's complaint is limited to any kind of discrimination growing out of such allegations during the pendency of the case before the EEOC. *See Nat'l Assoc. of Gov't Employees v. City Public Service Board of San Antonio, Texas,* 40 F.3d 698, 711 (5th Cir.1994). De Blasi states that the EEOC never notified the hospital that Plaintiff had filed a charge of discrimination against ·Pulmonary Care or Defendants with regard to the coordinator position. (De Blasi Decl. ¶ 4.) De Blasi also states that the EEOC never investigated or conciliated Plaintiff's complaint about the coordinator position in connection with the EEOC charge filed against Defendants regarding the director position. *Id.*

Because Plaintiff failed to name Defendants in the first EEOC charge, and because his second EEOC charge fails to complain of the earlier discriminatory promotion claim, Plaintiff has failed to exhaust his administrative remedies against Defendants for the alleged discrimination in May of 1995. For this infirmity, among others not discussed here,[7] Plaintiff cannot sustain his claim against Defendants for Pulmonary Care's failure to promote him to the coordinator position.

The Court concludes that, as a matter of law, Defendants cannot be held vicariously liable for Pulmonary Care's alleged discrimination in failing to promote Plaintiff to the position of coordinator. Furthermore, because this claim is beyond the scope of the only EEOC charge Plaintiff ever filed against Defendants, Plaintiff has failed to exhaust his administrative with regard to this claim. The Court, therefore, grants summary judgment on this claim.

It is therefore **ORDERED** that Defendants' Motion for Summary Judgment, filed on August 29, 1997, is hereby **granted,** such that Plaintiff's claims are **dismissed with prejudice.**

---

**7.** For example, because Plaintiff never actually applied for the position because he did not know about it, he would have to show that his employer was under some duty to approach him with the position before filling it. *See Jones v. Flagship International,* 793 F.2d 714, 724 (5th Cir. 1986). Defendants did not raise this argument, and thus Plaintiff did not address it and the Court does not rely upon it, but it does not appear from the evidence in the record that Plaintiff could meet this burden.