Opinion issued January 25, 2006






 






In The

Court of Appeals

For The

First District of Texas






NO. 01-04-01160-CV






PATRICIA DAVIS, Appellant


V.


HOUSTON COMMUNITY COLLEGE SYSTEM, Appellee






On Appeal from the 152nd District Court

Harris County, Texas

Trial Court Cause No. 2003-25164






MEMORANDUM OPINION

 Patricia Davis, appellant, appeals the trial court's granting of summary
judgment against her and in favor of appellee Houston Community College System
(HCC). Davis sued HCC for race discrimination. See Tex. Lab. Code Ann.
§ 21.051 (Vernon 2006). The trial court rendered summary judgment in favor of
HCC. In her sole issue on appeal, Davis contends that a remark made by an HCC
employee about the race of another employee is sufficient evidence to show a genuine
issue of material fact that Davis was not hired by HCC due to her race. We conclude
that Davis has not raised a fact issue as to whether the racially neutral reason
proffered by HCC to justify its hiring decision was false or a pretext for
discrimination. Accordingly, we affirm.

Background

 In the spring of 2001, Davis, an African-American woman holding a master's
degree in counseling, applied for a full-time position as a counselor at HCC's West
Loop campus. A long-time employee of HCC, Davis had been at the West Loop
campus as a counselor for about one-and-one-half years under a temporary, month-to-month contract.

 Kathy Lockwood, chair of the counseling department at the West Loop
campus, led a screening committee in charge of initially evaluating the applicants. 
The screening committee examined the 48 written applications and narrowed the pool
to nine people, including Davis. The screening committee then interviewed the nine
people, and again narrowed the pool of applicants to three people, including Davis. 
When one of the three people withdrew his name from consideration because he
received other employment, the pool was limited to two applicants, Davis and Sandy
Nemeth, an Anglo woman with a Master's Degree in Curriculum and Instruction.

 Davis and Nemeth were again interviewed, but this time by "the final selection
committee" that was composed of only two people, Lockwood and Irene Porcarello,
Dean of Student Development at HCC's Southwest College. Lockwood and
Porcarello asked the two candidates questions that had been approved by the Human
Resources Department. After conducting both interviews, Lockwood gave Nemeth
a higher rating and recommended Nemeth for the position. Porcarello, however, gave
the two candidates equal rankings. 

 After the interviews, and before a decision was made, Porcarello and Nemeth
discussed "how the interviews had gone." During those discussions, Porcarello
concurred with Lockwood that Nemeth was the better candidate. Lockwood
described her role in the hiring process by stating that she "assisted [Porcarello] in the
selection process." 

 Although Lockwood assisted with the selection process, Porcarello maintains

that her decision regarding which candidate to hire was made independently. 
Porcarello's affidavit states that Lockwood "was present for the interviews, [but] I
was charged with making the final recommendation to the President." Porcarello also
asserts in her affidavit that she "independently decided" that Nemeth was the "better
candidate, based on her greater experience." Porcarello further states that "nothing
Ms. Lockwood said influenced my decision to recommend Ms. Nemeth, because I
had already made that decision based on my personal evaluation of the two
candidates." Porcarello testified similarly in her deposition that she "made the final
decision . . . as the lead person, Dean of Student Services."

 Later that year, in the summer of 2001, Lockwood was reprimanded for making 
an inappropriate racial comment to a fellow employee, Mary Page, who was an
African-American counselor at HCC's Southwest College. That incident arose when
Porcarello asked Lockwood to inform Page that Page was being transferred from the
Southwest College to the Stafford campus because Page was frequently absent from
work and her absences could better be accommodated at the larger campus. Rather
than discuss the absences, Lockwood informed Page that Page was being transferred
because "there needs to be a greater presence of white counselors at the West Loop
campus." Page complained about Lockwood's comment, and after an investigation,
HCC's president removed Lockwood from her position as chair of the counseling
department and required her to participate in sensitivity training. After learning of
Lockwood's inappropriate comment concerning the race of counselors at the HCC
campus, Davis filed this lawsuit contending that she was not hired for the counselor
position due to her race.

Standard of Review

 We review summary judgments de novo. Valence Operating Co. v. Dorsett,
164 S.W.3d 656, 661 (Tex. 2005). Summary judgment is proper only when the
movant establishes that there is no genuine issue of material fact and that the movant
is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). The motion must
state the specific grounds relied upon for summary judgment. Id. In reviewing a
traditional summary judgment, we must indulge every reasonable inference in favor
of the nonmovant, take all evidence favorable to the nonmovant as true, and resolve
any doubts in favor of the nonmovant. Valence, 164 S.W.3d at 661. 

Elements of Claim of Discrimination

 The relevant portion of the Texas Labor Code states, "An employer commits
an unlawful practice if because of race . . . the employer . . . fails or refuses to hire an
individual . . . ." Tex. Lab. Code Ann. § 21.051(1). A claim for discrimination has
three steps with shifting burdens of proof. Here, the parties do not challenge the first
two steps, and dispute only whether the third step has been met. (1)

 The third step, which is the step that is disputed in this motion for summary
judgment, places the burden of proof on the plaintiff. See Crawford v. Formosa
Plastics Corp., 234 F.3d 899, 902 (5th Cir. 2000). To prevail on her claim of
discrimination, Davis must produce evidence from which a reasonable juror could
infer that HCC's proffered reason for not promoting her is false and a pretext for
discrimination. See id. A plaintiff's prima facie case, "combined with sufficient
evidence to find that the employer's asserted justification is false, may permit the trier
of fact to conclude that the employer unlawfully discriminated." Reeves v. Sanderson
Plumbing Prods., 530 U.S. 133, 148, 120 S. Ct. 2097, 2109 (2000). The question
here is whether Lockwood's role in the selection process is sufficient to raise a
genuine issue of material fact that HCC did not hire Davis due to Davis's race. 

HCC's Reasons for Failing to Hire Davis

 HCC's motion for summary judgment contends that Davis has failed to produce
any evidence to show that HCC's proffered reason for not promoting her is false and
a pretext for discrimination and that Davis's race was a substantial or motivating
factor in the decision to promote another candidate ahead of her. See Crawford, 234
F.3d at 902. Davis responds that she has produced some evidence to show that
HCC's proffered reason for not promoting her is false and a pretext for
discrimination. See id. Davis relies on two arguments. First, Davis claims that she
is more qualified for the position than Nemeth. Second, Davis contends that
Lockwood participated in hiring Nemeth and that Lockwood made a discriminatory
statement about the need for Anglo counselors at the HCC campus later during the
year. We agree with the trial court that Davis fails to raise facts from which a
reasonable juror could infer that HCC's reasons for hiring Nemeth were false or a
pretext for discrimination. 

A. Comparative Qualifications of Candidates 

 Davis asserts that, as the candidate who holds a Master's degree in Counseling,
she is more qualified for the counseling position than Nemeth. HCC responds that
Nemeth not only had a Master's degree in Curriculum and Instruction that met the job
description, but also had more years of experience as a counselor than Davis.

 The Fifth Circuit has recognized that courts are "not well suited by training and
experience to evaluate qualifications." Odom v. Frank, 3 F.3d 839, 847 (5th Cir.
1993). "[U]nless disparities in curricula vitae are so apparent as virtually to jump off
the page and slap us in the face, we judges should be reluctant to substitute our views
for those of the individuals charged with the evaluation duty by virtue of their own
years of experience and expertise in the field in question." Id.; see also Scott v. Univ.
of Miss., 148 F.3d 493, 508 (5th Cir. 1998); E.E.O.C. v. La. Office of Cmty. Serv., 47
F.3d 1438, 1444 (5th Cir. 1995).

 HCC's evidence shows that Nemeth had a Master's Degree in Curriculum and
Instruction, which met the job description that required a "Master's Degree in
Counseling and other related fields of study." Porcarello testified at her deposition
that "Curriculum and Instruction" is considered a related field of study that meets the
academic requirements of the position.

 HCC's evidence also shows that Nemeth had more experience as a
counselor--11 years, in contrast to Davis's one-and-one-half. Porcarello noted that
Nemeth had been a full-time counselor at Northwest College for six years, where she
counseled disabled students in issues related to the Americans with Disabilities Act. 
She also had worked as a part-time counselor for five years and had "a wealth of
experience in different fields." Although Porcarello scored Davis and Nemeth
equally after interviewing both of them, Porcarello explained that she broke the tie
by going with the candidate who had the most counseling experience.

 HCC's evidence shows that Nemeth was qualified for the position and thus no
disparity in qualifications exists that raises a fact issue on any discriminatory intent. 
See Odom, 3 F.3d at 847. We conclude that Davis has failed to raise a fact issue
concerning her claim that she was more qualified than Nemeth. (2)

B. Lockwood's Participation in the Selection Process

 Because the evidence undisputedly shows that Lockwood assisted in the
selection process and consulted with Porcarello before Porcarello made the decision
to recommend the hiring of Nemeth, Davis further asserts that Lockwood, who Davis
contends was racially biased against African-Americans, improperly affected the
hiring decision by HCC, thus raising a fact issue as to HCC's discriminatory intent. 
HCC responds that it is undisputed that Porcarello made the independent and final
decision regarding who to recommend for hiring. Moreover, Davis conceded in her
deposition that Porcarello was not biased against her on the basis of race. 

 Davis has not shown a causal nexus between Lockwood's remark and the hiring
decision by Porcarello at issue in this case. Lockwood's inappropriate comment was
made to Page, another employee at HCC, and was not to Davis or about Davis. 
Moreover, the screening committee led by Lockwood recommended Davis as a
possible candidate for the counselor position, together with two others, (3) from an
applicant pool of 48 people. Thus Davis has failed to raise a fact issue regarding a
nexus between the later comment made by Lockwood to another employee and
Porcarello's decision not to recommend Davis. See Smith v. Firestone Tire & Rubber
Co., 875 F.2d 1325, 1330 (7th Cir. 1989) ("Such remarks, as offered by the plaintiff,
when unrelated to the decisional process, are insufficient to demonstrate that the
employer relied on illegitimate criteria, even when such statements are made by the
decision-maker in issue. Plaintiff has failed to provide the requisite nexus between the
statements made by the defendant and the demotion of the plaintiff to demonstrate that
plaintiff's race was a 'substantial factor' in the defendant's decision."); see also Price
Waterhouse v. Hopkins, 490 U.S. 228, 251, 109 S. Ct. 1775, 1791 (1989) ("Remarks
at work that are based on sex stereotypes do not inevitably prove that gender played
a part in a particular employment decision. The plaintiff must show that the employer
actually relied on her gender in making its decision."). 

 Davis relies on Porcarello's acknowledged compliance with HCC's Screening
Committee Guidelines as some evidence that Lockwood affected Porcarello's hiring
decision. HCC's guidelines state that "Members of the Screening Committee provide
applicant evaluation, input, attend meetings, maintain confidentiality about
information on all candidates, and work as a cooperative team to achieve consensus
of decisions." Porcarello's deposition testimony, however, explains that there were
two phases for hiring. One was the screening committee that she did not participate
in, and the latter was her sole decision, after discussions with Lockwood. HCC's
screening committee guidelines were pertinent to the first phase of hiring. Davis's
complaint, however, is related solely to the final decision to hire Nemeth over her. 
HCC's screening committee guidelines at the first stage of hiring did not affect the
ultimate hiring decision because the committee did not reject Davis, but recommended
her as a finalist. Porcarello's compliance with the screening committee guidelines, 
therefore, is no evidence that Lockwood affected the final hiring decision.

 HCC contends that the facts here are similar to those in Cesaro v. Lakeville
Community School District, in which the court held that Cesaro failed to establish
discrimination under circumstances that showed that board members of the school
district, not the superintendent, made the ultimate hiring decision, and that Cesaro had
been one of the finalists chosen by the screening committee. 953 F.2d 252 (6th Cir.
1992). Although Cesaro alleged that a lower-level supervisor was improperly biased
against her due to her gender, the court noted that the final decision-maker was not
improperly biased and hired the more qualified candidate. Id. Here, although Davis
alleges that Lockwood showed bias, the screening committee led by Lockwood chose
Davis as a finalist, and the ultimate hiring decision was made by Porcarello, not by
Lockwood. The holding in Cesaro supports HCC's claim that Davis has failed to
make a showing of discrimination by Porcarello. See id. 

 Davis further contends that Porcarello's affidavit in support of the motion for
summary judgment contains a false statement, and asserts that the trier of fact may
"infer the ultimate fact of discrimination from the falsity of the employer's
explanation." Reeves, 530 U.S. at 147, 120 S. Ct. at 2108. Davis identifies as a false
statement Porcarello's statement in her affidavit that "nothing Ms. Lockwood said
influenced my decision to recommend Ms. Nemeth, because I had already made that
decision based on my personal evaluation of the two candidates." (4) Even when we
view this evidence in a light most favorable to Davis, we cannot conclude that the
record shows that Porcarello made false statements about how she reached her hiring
decision. Porcarello consistently acknowledges that she had discussions with
Lockwood during the hiring process. Porcarello's statement that she was not
"influenced" in her decision by her discussions with Lockwood is not inconsistent
with the fact that she had the discussions. The evidence in this case thus is unlike the
evidence in Reeves, where the employee "made a substantial showing that [the
employer's] explanation was false." Id. at 144, 120 S. Ct. at 2107. Although
Lockwood undisputedly participated in the selection process, it is also undisputed that
Porcarello, as dean of the college, was the final decision-maker and states that she
independently decided not to hire Davis because Nemeth had more counseling
experience. Compare Russell v. McKinney Hosp. Venture, 235 F.3d 219, 227 (5th Cir.
2000) (holding plaintiff proved discrimination by person who was not formal decision-maker because person wielded "sufficiently great 'informal' power within Homecare
that he effectively became the decision maker with respect to Russell's termination")
with Lampallas v. Mini-Circuits, Lab., Inc., 163 F.3d 1236, 1249-50 (11th Cir. 1998)
(refusing to impute supervisor's bias to president when president met personally with
plaintiff to discuss situation before firing her). We note further that Davis conceded
in her deposition that Porcarello did not have any racially discriminatory bias against
her. Any discriminatory intent by Lockwood, therefore, cannot be imputed to
Porcarello. See Willis v. Marion, 118 F.3d 542, 546 (7th Cir. 1997) ("Statements by
subordinates normally are not probative of an intent to retaliate by the decision
maker."); Blanding v. Pa. State Police, 12 F.3d 1303, 1308 (3d Cir. 1993) (holding
alleged racial bias of officer who investigated allegations against plaintiff that resulted
in his termination did not prove discrimination, where plaintiff's supervisor based
termination on independent review of objective evidence). We hold that Davis has
failed to raise a genuine issue of material fact that she was not hired due to her race. 

 We overrule Davis's sole issue in this appeal.




Conclusion

 We affirm the trial court's judgment.



 Elsa Alcala

 Justice


Panel consists of Chief Justice Radack and Justices Alcala and Bland.
1. The first step in establishing a claim of discrimination places the burden on the
plaintiff to make a prima facie case of race discrimination. HCC concedes for the
purposes of the motion for summary judgment that Davis has established the four
elements that make a prima facie case for race discrimination because (1) she is a
member of a protected class, (2) she was qualified for her position, (3) she was
subject to an adverse employment action, and (4) she was treated less favorably than
others outside the protected class who were similarly situated to her. See Okoye v.
Univ. of Tex. Houston Health Science Ctr., 245 F.3d 507, 512-13 (5th Cir. 2001). 
The second step in establishing a claim of discrimination places the burden on the
defendant to articulate a legitimate, nondiscriminatory reason for failing to promote
Davis to the counselor position. See Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S.
248, 260, 101 S. Ct. 1089, 1097 (1981). HCC contends that the legitimate,
nondiscriminatory reason for failing to promote Davis to the counselor position is that
"Nemeth had more applicable counseling experience." Davis does not challenge that
HCC has articulated a legitimate, nondiscriminatory reason for failing to promote
Davis to the counselor position. See id., 101 S. Ct. at 1097.
2. Davis's subjective belief that her failure to be promoted was race discrimination "is
not enough to survive a summary judgment motion, in the face of proof showing an
adequate nondiscriminatory reason." Patton v. United Parcel Serv., Inc., 910 F. Supp.
1250, 1263 (S.D. Tex. 1995). 
3. One applicant dropped out before the final interviews.
4. Davis contends that this assertion is inconsistent with other statements by Porcarello and
Lockwood. Davis points to Porcarello's other testimony, which is as follows:


 Q. After you consulted with Kathy Lockwood and got her input - - 

 A. Yes.

 Q. - - that you made your decision.

 A. Yes. And also input from our President.

 Q. Okay. Who did Kathy Lockwood recommend?

 A. When we met she did not recommend Patricia Davis.


 Davis also points to Lockwood's testimony that states


 Q. And prior to Irene [Porcarello] recommending the hiring of Sandy Nemeth,
as full-time counselor, you told Ms. Porcarello that you believed Sandy
Nemeth was the better candidate?

 A. Yes, I did. 

 Q. So, you assisted her in the selection process?

 A. Yes, I did.