United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 17, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 03-60380

_____

CATHY B. COOK,

Plaintiff – Appellant,

v.

MISSISSIPPI DEPARTMENT OF HUMAN SERVICES,

Defendant – Appellee.

_____

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 1:01-CV-46-6

_____

Before DAVIS, BARKSDALE, and PRADO, Circuit Judges.

PER CURIAM:[*]

Appellant, Cathy B. Cook ("Cook"), a white female, brought this claim of reverse racial discrimination against the Mississippi Department of Human Services ("MDHS") after MDHS selected Samuel Buchanan ("Buchanan"), a black male, for the position of Director of the Chickasaw County office of MDHS ("Chickasaw County DHS"). For the reasons set forth below, we affirm the district court's entry of summary judgment in favor of

---

[*]Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

1

MDHS.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Cathy Cook began her employment at the Chickasaw County DHS as a clerk in 1986 and worked her way up to the position of case manager in 1999.  When the position of Director of the Chickasaw County DHS became vacant, Cook applied for the job.

Out of fourteen applicants, the Mississippi State Personnel Board selected five candidates who met the minimum qualifications for the county director position.  Among these "eligibles," two were white, including Cook, and three were black, including Samuel Buchanan.  The five eligibles were tested, interviewed, and evaluated by a panel of four MDHS officials.  The MDHS panel ranked the candidates and submitted their top three choices to the governor; all three recommended candidates were black. Buchanan was ranked second, so his name was forwarded to the governor for final consideration; Cook was ranked fifth, so she was eliminated from the hiring process.  Buchanan was ultimately hired for the director position.

Believing she had been passed over for the county director position because of her race, Cook brought a claim of reverse racial discrimination against MDHS under Title VII and 42 U.S.C. § 1981.  MDHS responded that it hired Buchanan because he was the most qualified candidate and moved for summary judgment.  In opposition to MDHS's summary judgment motion, Cook argued that

2

she was clearly better qualified than Buchanan. The district court found that Cook had not offered sufficient evidence to raise a fact question about whether MDHS's reason for hiring Buchanan was a pretext for race discrimination. Thus, the district court granted summary judgment in favor of MDHS. Cook timely appealed.

## II. ANALYSIS

On appeal, Cook challenges the district court's entry of summary judgment on behalf of MDHS. She argues that the district court's exclusion of a statement attributed to Mississippi State Senator Jack Gordon as hearsay was error. She further contends that the district court's requirements at the *prima facie* case stage were too burdensome, and therefore erroneous. Finally, Cook asserts that the district court erred in finding that she failed to raise a fact question on pretext.

## A. Exclusion of Statement Attributed to Senator Gordon

Admission or exclusion of evidence is within the sound discretion of the district court. Absent proof of abuse of discretion, we will not disturb a district court's evidentiary rulings. *Jon-T Chem., Inc. v. Freeport Chem. Co.*, 704 F.2d 1412, 1417 (5th Cir. 1983).

Cook contends that the district court erred by refusing to consider her account of a statement attributed to Senator Gordon. The record contains no statements made directly by Senator

Gordon, either in an affidavit or in testimony. Rather, Cook recounted a statement purportedly made by Senator Gordon in her own affidavit and in her deposition, which she submitted with her motion opposing summary judgment. In her affidavit, Cook stated that after Buchanan was appointed Director, she called Senator Gordon to express her dissatisfaction about not being promoted. During that conversation, Senator Gordon allegedly told Cook that, after speaking to MDHS director Janice Broom Brooks,[1] he believed that Buchanan's selection as director was racially-motivated. The district court deemed this statement to be inadmissible hearsay and did not consider it in reviewing MDHS's summary judgment motion.

On appeal, Cook does not argue that Senator Gordon's purported statement was not hearsay. She claims instead that her account of his statement should have been admitted under the hearsay exceptions in FED. R. CIV. P. 801, as an admission by a party-opponent, and FED. R. CIV. P. 807, the residual exception to the hearsay rule.

Rule 801 (d)(2)(D) provides that a statement by a party's

---

[1]Cook's account of her conversation with Senator Gordon also included statements allegedly made by Janice Brooms Brooks to Senator Gordon. Though the trial court did not address these particular statements directly (it held only that all statements offered were inadmissible hearsay), they were presumably excluded because they constituted "double hearsay." However, we need not assess the propriety of the district court's exclusion of those statements because Cook does not raise the issue of their admissibility on appeal.

4

agent or servant concerning a matter within the scope of agency or employment, and made during the existence of the agency relationship, is not hearsay. Cook argues that Gordon is an agent or servant within the meaning of Rule 801 because the Mississippi legislature has oversight over MDHS and its finances, and Senator Gordon is Chairman of the Senate Appropriations Committee. To be considered an "agent" under Rule 801 (d)(2)(D), a person need not have been an actual decision-maker in the hiring process. *See Yates v. Rexton, Inc.*, 267 F.3d 793, 802 (8th Cir. 2001). However, a person must at least have been involved in or participated in the process leading to the challenged employment decision to establish a relevant agency relationship. *See Hill v. Spiegel, Inc.*, 708 F.2d 233, 237 (6th Cir. 1983); *cf. Yates*, 267 F.3d at 802 (significant involvement, either as an advisor or participant in a process leading to the challenged decision, may be enough to establish agency under Rule 801 (d)(2)(D)).

Here, MDHS administered all hiring procedures for the director position, and the governor's office ultimately selected the new director. Members of the Mississippi legislature, including Senator Gordon, were far removed from actual involvement or participation in the process of selecting a new director. Therefore, Senator Gordon cannot be considered an "agent" of MDHS in the context of the county director hiring

5

process, and his purported statement to Cook was not admissible under Rule 801's exception to the hearsay rule.

Cook also argues that the statement attributed to Senator Gordon should have been admitted under FED. R. EVID. 807, the residual exception to the hearsay rule. Under Rule 807, a statement having circumstantial guarantees of trustworthiness, equivalent to those established under the other hearsay exceptions, is admissible if the court determines that: (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the issue than any other evidence reasonably procurable by the proponent; and (C) the interests of justice will be best served by admitting the statement. Congress intended the residual exception to be used only in rare circumstances. *See Huff v. White Motor Corp.*, 609 F.2d 286, 291 (7th Cir. 1979); *S.E.C. v. First City Fin. Corp., Ltd.*, 890 F.2d 1215, 1225 (D.C. Cir. 1989).

We find that this is not one of those uncommon circumstances warranting an exception to the hearsay rule under Rule 807. First, Cook points to no circumstantial guarantees of trustworthiness that justify admission of Senator Gordon's purported statement. Second, and most importantly, the purported statement was not so material that it must have been admitted in the interests of justice, because it could not raise a genuine issue of material fact as to racial discrimination. In her

6

deposition, Cook stated that Senator Gordon was not informed by anyone at MDHS that Buchanan was hired because of his race Rather, it was merely Senator's Gordon's purported opinion that Buchanan was chosen because of his race.  A "subjective belief of discrimination, however genuine, may not be the basis of judicial relief."  *Lawrence v. Univ. of Tex. Med. Branch at Galveston*, 163 F.3d 309, 313 (5th Cir. 1999).  Thus, the purported statement by Senator Gordon was not admissible under Rule 807, and the district court did not abuse its discretion in refusing to consider it as summary judgment evidence.

**B.    Reverse Race Discrimination Claim**

*1.    Standard of Review*

Rule 56 "*mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)) (emphasis in original).  Summary judgment is proper if the movant can demonstrate there are no genuine issues as to any material fact.  FED. R. CIV. P. 56 (c).  To overcome a motion for summary judgment, the non-movant must show that there is indeed a genuine issue as to a material fact, based on evidence greater than mere conclusory allegations or unsubstantiated assertions, that warrants a jury trial.  *Little*,

37 F.3d at 1075; *Taylor v. Gregg*, 36 F.3d 453, 457 (5th Cir. 1994). The trial court must make all reasonable inferences in favor of the non-moving party, and may not make credibility determinations or weigh the evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). We review a grant of summary judgment *de novo*. *Hanks v. Transcon. Gas Pipe Line Corp.*, 953 F.2d 996, 997 (5th Cir. 1992).

The summary judgment analysis is the same for claims of race discrimination under Title VII and 42 U.S.C. § 1981. *Pratt v. City of Houston, Tex.*, 247 F.3d 601, 605 n.1 (5th Cir. 2001); *Patel v. Midland Mem'l Hosp. & Med. Ctr.*, 298 F.3d 333, 342 (5th Cir. 2002). Absent direct evidence, this court applies the three-step burden-shifting framework articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). Under that framework, the plaintiff must first set forth a *prima facie* case of discrimination. *Id.* at 802. If the plaintiff makes a *prima facie* case, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the underlying employment action. *Id.*

Finally, if the employer proffers a legitimate rationale for the employment action, the burden shifts back to the plaintiff to show that the employer's proffered reason was a mere pretext for racial discrimination. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507-08 (1993). To survive summary judgment, in this third

8

stage, the plaintiff must support his claim of pretext with evidence that "discrimination lay at the heart of the employer's decision." *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002).

*2.   Prima Facie Case*

Cook initially argues that the district court applied the wrong legal standard in considering whether she had established a *prima facie* case.  Cook contends the district court required her to prove that she was "better qualified" at the *prima facie* stage, when she should have been required only to present evidence of the following elements, set forth under *McDonnell Douglas*:

1.   that she was a member of a protected class;
2.   that she was qualified for the position sought;
3.   that she experienced an adverse employment decision; and
4.   that she was replaced by someone outside the protected class.

411 U.S. 792, 802 (1973).

The four elements utilized in *McDonnell Douglas* are not the exclusive means of proving a *prima facie* case of racial discrimination under Title VII.  *See Int'l Brotherhood of Teamsters*, 431 U.S. 324, 358 (1977); *Jones v. W. Geophysical Co. of Am.*, 669 F.2d 280, 284 (5th Cir. 1982).  In *McDonnell Douglas*, the Supreme Court specifically observed that "[the] facts necessarily will vary in Title VII cases," and the *prima facie*

9

proof required in that case "is not necessarily applicable in every respect to differing factual situations."  411 U.S. at 802.

Nonetheless, the standard imposed by the district court in this case was too onerous at the *prima facie* case stage.  The district court required Cook to demonstrate the following:

1.   that she was a member of a protected class;
2.   that she was qualified for the position sought; and
3.   that the position eventually went to a *less qualified* applicant outside the protected class.

[Emphasis added].  In *Celestine v. Petroleos de Venezuela SA*, we noted that requiring plaintiffs to show at the *prima facie* case stage they were "better qualified" than those promoted would have been an erroneous expansion of the elements necessary to prove a *prima facie* case for racial discrimination.  *Celestine*, 266 F.3d 343, 356 (5th Cir. 2001) (holding that the district court required plaintiffs to show they were better qualified in order to rebut the defendant's proffered nondiscriminatory explanation for its employment decision, not to make their *prima facie* case); *see also Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 681 (5th Cir. 2001) (holding that a *prima facie* case is established once the plaintiff shows she meets objective employment qualifications; the issue of whether she meets subjective hiring criteria is addressed at the later stages of the Title VII analysis).  We adhere to our reasoning in *Celestine*; the district court's requirement that Cook show Buchanan was less qualified

10

for the director position at the *prima facie* case stage imposed too high a burden on Cook and was therefore erroneous.[2]  Indeed, the record shows that Cook presented evidence of each element of her *prima facie* case to survive summary judgment.  However, we find that the district court's imposition of incorrect *prima facie* requirements was harmless error because Cook failed to raise a genuine issue of material fact concerning pretext.

*3.  Pretext*

Because Cook made a *prima facie* case of race discrimination, the burden shifted to MDHS to offer a legitimate reason for hiring Buchanan over Cook.  MDHS asserted that Buchanan was chosen for the director position because he was "more qualified for the position [than Cook] in terms of education, budgetary experience, and leadership ability."  Having submitted this rationale, the burden then fell back on Cook to present evidence raising a genuine issue of material fact that MDHS's proffered

_____

[2]We also note that the standard articulated by the district court does not reflect the standard set forth in the case cited by the court — *Jett v. Dallas Independent School District*, 798 F.2d 748, 756 (5th Cir. 1986).  The *Jett* court merely noted that the plaintiff presented more evidence than necessary to make a *prima facie* case, including evidence of better qualifications. *Id.  Jett* then cited *Chaline v. KCOH, Inc.*, a case that also did not require a plaintiff to show she was more qualified to establish a *prima facie* case.  *Id.* (citing *Chaline*, 693 F.2d 477, 480-81 (5th Cir. 1982) (holding that a plaintiff must demonstrate the following to make a *prima facie* case of discrimination: (1) that she belongs to a protected class; (2) that she was qualified for the particular position; (3) that, despite her qualifications, she was rejected or discharged; and (4) that she was replaced by a nonminority)).

11

reason for hiring Buchanan was a pretext for race discrimination. *St. Mary's Honor Ctr.,* 509 U.S. at 507-08. We agree with the district court's finding that the evidence presented by Cook failed to create a jury issue on pretext.

Clearly Better Qualified

The thrust of Cook's challenge to MDHS's proffered rationale for selecting Buchanan is that she was clearly better qualified than Buchanan. This court has held that evidence of a plaintiff's superior qualifications may be probative of pretext because selection of a lesser qualified applicant might indicate a discriminatory motive; "[h]owever, the bar is set high for this kind of evidence." *Celestine*, 266 F.3d at 357. A plaintiff may show pretext sufficient to survive summary judgment by providing evidence that she was *clearly* better qualified as opposed to *merely* better qualified. *See Celestine*, 266 F.3d at 356-57; *E.E.O.C. v. La. Office of Cmty. Servs.*, 47 F.3d 1438, 1444 (5th Cir. 1995); *see also Deines v. Tex. Dept. of Protective & Regulatory Servs.*, 164 F.3d 277, 281 (5th Cir. 1999) (evidence of superior qualifications is probative of pretext); *Walther v. Lone Star Gas Co.*, 952 F.2d 119, 123 (5th Cir. 1992) (a plaintiff is entitled to a jury trial in an ADEA case if he presents evidence that he was *clearly* better qualified than younger employees who were retained) (emphasis in original). Similar or equivalent qualifications will not give rise to a fact question as to

pretext. *Price*, 283 F.3d at 723.

In support of her assertion that she was clearly better qualified than Buchanan, Cook first contends that Buchanan should have been *disqualified* from applying for the position because he allegedly violated state administrative policy and the Hatch Act, 5 U.S.C. § 1501. In 1999, Buchanan ran in a partisan election for Justice Court Judge of Chickasaw County. Mississippi State Policy and Procedures and the Hatch Act prohibit a state employee from being a candidate for political office in a partisan election. However, Buchanan was never cited for any infraction. Had Buchanan been cited, a disciplinary committee could have reasonably pardoned him based on MDHS's argument that he was merely a contract worker for MDHS. Because Buchanan had no adjudicated violation on his record, Cook has presented no evidence with this argument that should have been considered as a negative qualification of Buchanan's in this discrimination case.

Cook next claims that her qualifications, when set alongside Buchanan's, demonstrate that she was clearly better qualified to be Director. Her qualifications, as set forth in her summary judgment evidence, are as follows: (1) an Associate's Degree in Secretarial Science, which incorporated instruction in accounting; (2) fourteen years of work experience at MDHS, consisting of two years as a clerk typist and twelve years as a welfare eligibility case manager; (3) experience as a legal

13

secretary; (4) administrative work experience with the Soil Conservation Service office in Tupelo, Mississippi, which included helping to create a computer program for budgets throughout the region; and (5) management of a convenience store, including supervision of four store employees. Cook noted that she scored a perfect 100 on the MDHS personnel test administered during the interview process,[3] and that MDHS policy allowed relevant work experience to be substituted for educational experience on a year-to-year basis. She also submitted several affidavits of persons attesting to her good character and qualifications.[4]

In contrast, Buchanan possesses a Bachelor's Degree in Social Sciences and a Master's Degree in Public Administration. His graduate work included a study on the economics of Mississippi counties, policy work at the Mississippi Board of Funeral Service, and an internship with the city manager of

[3]All of the eligibles scored 100 except for Buchanan, who received a score of 97.

[4]Cook also attached an affidavit of Archie Paul Wood, a retired County Director of Lee County, Mississippi, stating Wood's belief that he suffered from racial discrimination during his career at MDHS. Cook also included the complaint filed in a lawsuit by a former MDHS employee who was terminated, allegedly based on race; and statistics showing that four of the last five county directors appointed were black, and that MDHS has 56 white and 21 black county directors in the state. However, Cook did not explain, either in the district court or on appeal, nor is it evident to this court, how this evidence raises a fact question about whether MDHS's reason for hiring Buchanan – his leadership, budgetary, and educational skills – was pretext for discrimination.

14

Grenada, Mississippi. Buchanan stated in his deposition that while he did not have budgetary experience from prior employment, he had taken two graduate classes on creating budgets. Further, Buchanan's proffered work experience consisted of: (1) two years as a contract employee with MDHS, finding employment for Temporary Aid for Needy Families recipients and occasionally teaching job readiness classes; (2) twelve years experience as director of a university dormitory, which included supervision of five to fifteen employees; (3) one summer as park director for the City of Okolona, including supervision of three to five part-time employees; (4) assistant counselor for a youth offender program in the regional community counseling office; and (5) supervision of federal prisoners at a halfway house. Buchanan scored a 97, a passing score, on the MDHS personnel test.

MDHS justified its selection of Buchanan over Cook based on Buchanan's education, budgetary experience, and leadership ability. In response, Cook emphatically argues that her long tenure at MDHS as case manager compared to Buchanan's lack of any experience in that position (a position held by the employees that Buchanan now supervises) demonstrates that she was clearly better qualified and that MDHS's justification was pretextual. Nevertheless, Cook's more extensive work experience at MDHS does not give rise to a triable fact question about pretext because it is not sufficient to demonstrate that she was clearly better qualified.

15

First, MDHS was free to place greater import on Buchanan's graduate education and training than Cook's experience as a case manager. An employer is free to determine which type of experience is more relevant to an open position. *See La. Office of Cmty. Servs.*, 47 F.3d at 1445-46; *see also Price*, 283 F.3d at 723 (finding that plaintiff's better education, work experience, and longer time with the company did not demonstrate that he was clearly better qualified). Therefore, evidence of substantially more of a certain type of experience is not probative of superior qualifications. *See La. Office of Cmty. Servs.*, 47 F.3d at 1445-46. We do not second guess an employer's weighing of some qualifications over others unless such weight is irrational or application of those standards is inconsistent. *Id.* Here, Cook presents no evidence that MDHS's emphasis on education, budgetary experience, or leadership ability was irrational, or that the standards were inconsistently applied; hence, we do not question MDHS's decision to value those skills more highly than case manager experience with MDHS.

Second, and most importantly, Cook's overall resume fails to glaringly outshine Buchanan's, so as to show that she was clearly better qualified. To raise a fact question about pretext based on better qualifications, a plaintiff's qualifications must, as a whole, "leap from the record and cry out to all who would listen that he was vastly — or even clearly — more qualified for the

16

subject job." *See Price*, 283 F.3d at 723 (quoting *Odom v. Frank*, 3 F.3d 839, 847 (5th Cir. 1993)).  In *E.E.O.C. v. Louisiana Office of Community Services*, we emphasized that:

> unless disparities in curricula vitae are so apparent as virtually to jump off the page and slap us in the face, we judges should be reluctant to substitute our views for those of the individuals charged with the evaluation duty by virtue of their own years of experience and expertise in the field.

47 F.3d 1438, 1444 (5th Cir. 1995) (quoting *Odom*, 3 F.3d at 847). Accordingly, disparities in qualifications are "generally not probative evidence of discrimination unless those disparities are 'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.'" *Celestine*, 266 F.3d at 357 (quoting *Deines*, 164 F.3d at 280-81). When contrasted with Buchanan's resume, including his master's degree in public administration and his more extensive supervisory experience, Cook's qualifications do not "jump off the page and slap us in the face;" hence, a reasonable juror could not conclude that Cook's qualifications were blatantly superior to Buchanan's.

Based on the evidence presented at summary judgment, a factfinder could conclude that Cook was qualified to be Director based on her years with MDHS as a case manager, the positive reviews of work performance during that time, the affidavits offered in support of her abilities, and her perfect score on the

personnel test.  Nonetheless, Cook fails to raise a fact question about whether MDHS's reason for selecting Buchanan — that he was the more qualified candidate — was pretextual because she has not presented evidence that could lead a rational factfinder to conclude that she was clearly better qualified than Buchanan.

<u>Subjectivity of Hiring Criteria</u>

As an additional argument that MDHS's reason for hiring Buchanan was pretext for discrimination, Cook contends that MDHS's hiring criteria were so subjective as to be inherently suspect.  In making this claim, Cook points to the interviewing panel's evaluations of Cook and Buchanan.  The panel stated the following regarding Cook:

1.  Ms. Cook's educational background was not impressive;
2.  Ms. Cook had no supervisory experience;[5]
3.  Ms. Cook appeared to the interviewing panel to have the preconceived notion that she was entitled to the position by virtue of the fact that she had worked in the Chickasaw office for fourteen years; and
4.  Her demeanor during the interview indicated to the panel that she was not what MDHS was looking for in a County Director.

In contrast, the panel noted that Buchanan:

1.  Had an impressive background in work experience and education;
2.  Interviewed well, was articulate and enthusiastic, and was well at ease;
3.  Was not intimidated by the interview or demands of the job;

_____

[5]Despite this assertion, Cook's application for the Director position stated that she had supervised four employees at a convenience store.

18

> 4. Was confident he could meet the demands of the job, fit what the panel was looking for, and appeared to be client-oriented.

Cook contends these evaluations were almost wholly subjective and that they allowed the panel to submit the three black candidates, rather than the three best candidates (presumably including Cook) to the governor for the final selection.

An employer's reliance on wholly subjective criteria to make employment decisions provides a ready mechanism for racial discrimination. *See Medina,* 238 F.3d at 681 (employer may not utilize wholly subjective criteria by which to evaluate employee qualifications and then claim lack of qualification when the process is challenged as discriminatory); *Carroll v. Sears, Roebuck & Co.*, 708 F.2d 183, 192 (5th Cir. 1983) (predominately subjective promotional practices warrant strict scrutiny by the courts). However, "[t]he mere fact that an employer uses subjective criteria is not . . . sufficient evidence of pretext." *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 882 (5th Cir. 2003); *see also Page v. U.S. Indus., Inc.*, 726 F.2d 1038, 1046 (5th Cir. 1984).

Here, MDHS's focus on largely subjective factors during its interview process is not sufficient to raise a fact question as to race discrimination. MDHS's interviewing process permitted it to meet with candidates, who all possessed competitive qualifications, to determine which of them was the right "fit"

19

for the position.  Cook did not present evidence that could show she was a clearly better qualified candidate than Buchanan; and MDHS's consideration of subjective factors does not, of itself, present a triable question of fact about whether its rationale for hiring Buchanan was pretext for race discrimination.

## III. CONCLUSION

In sum, the district court properly excluded the purported statement of Senator Gordon as hearsay.  And while the district court applied the incorrect legal standard for making a *prima facie* case of race discrimination, this error was harmless.  Finally, Cook failed to present sufficient evidence of pretext to survive summary judgment.  Accordingly, we AFFIRM entry of summary judgment in favor of MDHS.

AFFIRMED.