# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 28, 2012

No. 10-40843

Lyle W. Cayce
Clerk

WILLIAM DEXTER WHITE,

Plaintiff-Appellant,

versus

RONALD C. FOX, Major; ROBERT E. TAYLOR, Captain, et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Eastern District of Texas
USDC Case No. 6:05-cv-00026-JKG

Before REAVLEY, ELROD and GRAVES, Circuit Judges.

PER CURIAM:[*]

Appellant, William Dexter White, Texas prisoner # 545599, confined in the Texas Department of Criminal Justice Correctional Institutions Division ("TDCJ - ID"), appeals, proceeding *pro se*, the magistrate judge's summary judgment dismissal of his civil action for deprivation of rights – failure-to-protect and due process – complaint pursuant to 42 U.S.C. § 1983. We AFFIRM in part, and REVERSE and REMAND in part.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I.  Facts and Procedural History

### A.     White's Complaint and Allegations

White  alleged that Major Ronald C. Fox endangered his life by telling Lewis Barnes, a prisoner at the Michael Unit of the TDCJ - ID in Tennessee Colony (a Dallas suburb), Texas, that White was an informant.  He further contended that Major Fox deliberately disregarded his safety by placing him in the general population, where he was subject to vicious assaults because he was labeled a "snitch."

In March 2003, Major Fox allegedly told Barnes that White had given incriminating statements about Barnes.  In April 2003, TDCJ - ID transferred White to the Darrington Unit of the TDCJ - ID in Rosharon (a  Houston suburb), Texas.  In August 2004, Robin Earl Frazier, a Darrington Unit prisoner, overheard, according to his own sworn affidavit, another prisoner state that he had learned that White was an informant, *i.e.*, a snitch.  In September 2004, White was allegedly assaulted at the Darrington Unit.  Through October 2004, White was treated for facial lacerations and bone fractures.

In addition, White alleged that disciplinary proceedings, which Captain Robert E. Taylor conducted, regarding a December 2002 attempted extortion charge, resulted in the loss of good time credits and violated his due process rights.  He contended that he did not receive adequate notice of the hearing or of the evidence to be used against him.  White further alleged that he was not allowed to call witnesses or present rebuttal evidence.  He also claimed that prison officials failed to provide a complete written record of the disciplinary hearing, then later falsified the record. White asserted that he was forced to rely upon the incomplete record when he appealed the conviction, then prison personnel "altered" the record to "cover up" the constitutional violation.  White further requested that the disciplinary case be stricken from his files.

In sum, White alleges that: 1) he was denied due process; 2) the disciplinary charge was false; and 3) the actions of prison officials resulted in hardship, including physical harm and permanent disfigurement.

## B.    Evidentiary Hearing

### 1.    The Claim against Captain Taylor

On August 18, 2005, the magistrate judge conducted an evidentiary hearing pursuant to 28 U.S.C. § 636(c) (which establishes the jurisdiction and some of the powers of magistrate judges). A prison representative appeared at the evidentiary hearing. White testified that the present instance involved problems at the Michael Unit, which began with the disciplinary charge of extortion. The gravamen of White's claim is that the disciplinary hearing record was originally produced with blanks and then altered after he filed his administrative appeal. White contended that the extortion charge was false and made in retaliation for his filing of grievances and his actions as a grievance author. White indicated that prior to the extortion charge, he had filed grievances on behalf of himself and others against prison officials. White further argued that Captain Taylor denied him due process throughout the proceeding. He contended that: 1) he was not allowed to call witnesses, 2) the hearing notice was inadequate and failed to state how he had attempted the extortion, 3) he did not receive copies of the evidence, 4) he did not have 24 hours to review the evidence, and 5) he was denied the right to introduce evidence.

### 2.    The Claim against Major Fox

White testified that Major Fox knew that other prisoners were aware that White was an informant:

THE COURT:   But you think it happened to you once you got to Darrington and this snitch jacket[1] went with you?

MR. WHITE: Yes, ma'am.  In fact, I know it did because when I got there Barnes was -- [Warden Avairo] Vasquez [sic], senior warden Vasquez, he's senior warden on the Darrington Unit, I carried the letter with me, the affidavit that you have that's a exhibit in here.  I think it's Exhibit K, if I'm not mistaken.  But at any rate, I carried it over there with me to show classification when I got there.  They said don't worry about it, Vasquez already knows about you and the craft shop work.  Barnes was Vasquez's personal craft shop worker when Vasquez was warden on the Michael[] [sic] Unit.  And he said he already knew about it before I got there.

THE COURT:   That Vasquez already knew that you had snitched on Barnes?

MR. WHITE: Yes, ma'am.

THE COURT:   So Vasquez, once you got to the Darrington Unit, then retaliated against you for snitching?

MR. WHITE:  Well, I'm not really saying he did.  I mean, I'm just saying that it was already there.  It was already known to administration I was supposed to be a snitch.

In summary, White contended that he was assaulted by other prisoners at the Darrington Unit because of the informant or "snitch" label.

## C.    White's First Appeal to this Court

On September 12, 2005, the magistrate judge issued an opinion and order dismissing with prejudice as frivolous White's claims against Major Fox and Captain Taylor, as well as all claims arising at the Michael Unit.  On September 19, 2005, White appealed to this court for the first time.  On October 6, 2008, this court affirmed in part and reversed in part.  This court stated that:

On remand, the district court should decide White's §1983 claim to the extent that White seeks damages for the disciplinary board's failure to provide him with a written statement of the evidence relied on during the

---

[1] "Snitch jacket" is a phrase connoting a reputation for being an informant.  It is not an actual jacket (as in a garment).  Jacket comes from the "file jackets" that were used by the authorities prior to computerization of records.  The phrase finds its roots in the fear of the unwritten code that exhorts prisoners not to inform on a fellow prisoner.

4

disciplinary proceeding.  The court should also consider the "snitch" claim and the alleged harm that resulted from this designation.  We caution, however, that the damages cannot encompass the "injury" of being deprived of good-time credits, and must stem solely from "the deprivation of civil rights."

*White v. Fox*, 294 F. App'x 955, 963 (5th Cir. 2008).

## D.    Limited Remand to the Magistrate Judge

When this case returned to the magistrate judge, the litigants filed a number of motions, including motions to recuse and retract consent to the magistrate judge, motion for leave to file their original answer and jury demand, three motions for default judgment, two motions to strike, motion for preliminary injunction, motion to produce documents, *etc.*  Finally, White filed two motions for summary judgment on July 29, 2009 and on October 26, 2009.  Likewise, Major Fox and Captain Taylor each cross-moved for summary judgment on January 15, 2010.  Major Fox argued that he neither designated nor used White as an informant, and that White's allegations regarding this issue failed to establish deliberate indifference.  Captain Taylor argued that he was entitled to summary judgment because White did receive a statement of the evidence that was used against him at the disciplinary hearing, and, although additional information was ultimately added to the form after the hearing, the added information was not new.  On March 8, 2010, the magistrate judge granted Captain Taylor's and Major Fox's motions for summary judgment and, again, dismissed White's complaint with prejudice.  *White v. Fox*, 2010 U.S. Dist. LEXIS 20433, *27-28 (E.D. Tex. March 8, 2010).  White, again, appealed to us. We, again, affirm in part, and reverse and remand in part.

## II.  Discussion

## A.    Standard of Review

5

This court reviews *de novo* a district court's dismissal of a complaint on a motion for summary judgment. *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 348 (5th Cir. 2007); *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003). The magistrate judge should construe "all facts and inferences in the light most favorable" to the prisoner. *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (citation omitted). The magistrate judge may not make credibility determinations or weigh the evidence in granting summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Cook v. Miss. Dep't of Human Servs.*, 108 F. App'x. 852, 856 (5th Cir. 2004). A genuine factual dispute will preclude a grant of summary judgment. *Anderson*, 477 U.S. at 242; *see also Bowden v. City of Electra*, 152 F. App'x. 363, 368 (5th Cir. 2005) (observing that the evidence must be believable by a reasonable trier of fact).

**B.     Captain Taylor's Motion for Summary Judgment**

White's chief claim against Captain Taylor is that, at the conclusion of the disciplinary hearing, White received a statement of the evidence that was subsequently altered, thus violating his due process rights. *White*, 294 Fed.Appx. at 960. He contends that the magistrate judge granted summary judgment "solely upon the fact that Captain Taylor did provide appellant a written record at the conclusion of the hearing that included the evidence relied upon to find him guilty." Finally, White argues that he clearly demonstrated that the alteration of the record harmed him. In ruling for Captain Taylor, the magistrate judge relied upon *Ponte v. Real*, 471 U.S. 491, 497 (1985), which concluded that "prison officials may be required to explain, in a limited manner, the reason why witnesses were not allowed to testify, but that they may do so either by making the explanation a *part of the 'administrative record'* in the disciplinary proceeding, or by presenting testimony *in court* if the deprivation

6

of a 'liberty' interest is challenged because of that claimed defect in the hearing." (emphasis added).

Due process requires, among other things, that the prisoner in disciplinary proceedings receive a written statement of the decision and the evidence relied on by the disciplinary board. *See Wilkinson v. Austin*, 545 U.S. 209, 225 (2005). In *Wilkinson*, the United States Supreme Court unanimously upheld a state's policy, which provided sufficient procedural protection of the prisoner's liberty interest to comply with the Fourteenth Amendment's due process requirements at the highest security prisons, known as "Supermax" facilities. *Id*. Pursuant to the policy that the Court examined in *Wilkinson*, the prisoner is provided with written notice summarizing the conduct or offense triggering the hearing at least 48 hours prior to the hearing. *Id*. at 216. At the time of notice, the prisoner also has access to the form, which details why the hearing was initiated. *Id*. The prisoner may attend the hearing, may "offer any pertinent information, explanation and/or objections . . ." and may submit a written statement. *Id*.

Here, Captain Taylor provided White with a TDCJ Disciplinary Report and Hearing Record at the conclusion of the hearing on or about December 30, 2002, and White received another, more detailed copy on or about February 21, 2003. "While the documents which White furnished do appear to show that additional information was added to the hearing record, White makes no showing that this alleged 'alteration' comprises a constitutional violation." *White*, 2010 U.S. Dist. LEXIS 20433, at *13. The magistrate judge added:

> [T]he form which White received at the conclusion of the hearing satisfied the constitutional requirement of due process by informing him of the evidence which was used against him, which was the officer's report. This provided White with an adequate statement of the evidence so as to allow him to appeal the conviction through the grievance procedure, which he did. Although White says that had he been given the later form, his

7

disciplinary case would have been overturned, he offers nothing to support this speculation; in fact, the record shows that White received this form before he filed his Step Two grievance, which grievance was not successful in securing a reversal of the disciplinary action. White's claim against Captain Taylor is without merit.

*Id*. at *16. This court agrees. Therefore, the magistrate judge's grant of Captain Taylor's motion for summary judgment is affirmed.

## C. Major Fox's Motion for Summary Judgment

White challenges the magistrate judge's grant of summary judgment in favor of Major Fox. He argues that Major Fox labeled him a "snitch" or informant when he was a prisoner at the Michael Unit. White further asserts that the informant designation was made known to prisoners at the Darrington Unit, and as a result, he was assaulted after TDCJ - ID transferred him there. White relies upon Barnes' statements and Frazier's affidavit to support his 42 U.S.C. § 1983[2] claim.

### 1. Duty to Protect Prisoners

The law imposes a statutory duty to protect prisoners from violence from other prisoners. 18 U.S.C. § 4042(a)(3) (2011) ("The Bureau of Prisons, under the direction of the Attorney General shall . . . provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses

---

[2] In its entirety, 42 U.S.C. § 1983 states:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

8

against the United States."). The United States Supreme Court, in a seminal case, definitively held "that a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). Even prior to *Farmer*, the Court proclaimed that there is a right to safety in prison. *See Davidson v. Cannon*, 474 U.S. 344, 352 (1986) ("In particular, it includes a prisoner's right to safe conditions and to security from attack by other inmates.").

> Chief Justice William H. Rehnquist wrote:
>
> [W]hen the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs -- *e.g.*, food, clothing, shelter, medical care, and reasonable safety -- it transgresses the substantive limits on state action set by the *Eighth Amendment* and the Due Process Clause.

*DeShaney v. Winnebago Cnty. Dept. of Soc. Servs.*, 489 U.S. 189, 200 (1989) (emphasis in original); *see also Bowers v. DeVito*, 686 F.2d 616, 618 (7th Cir. 1982) (Judge Richard A. Posner observed: "[i]f the state puts a man in a position of danger from private persons and then fails to protect him, it will not be heard to say that its role was merely passive; it is as much an active [role] as if it had thrown him into a snake pit."); *Leonardo v. Moran*, 611 F.2d 397, 398-99 (1st Cir. 1979) ("prison officials have a duty to protect prisoners from violence at the hands of other prisoners"); *Butler v. Dowd*, 979 F.2d 661, 675 (8th Cir. 1992) ("This Court has clearly held that prisoners have a constitutional right to be free from . . . attacks by other inmates."); *McGill v. Duckworth*, 944 F.2d 344, 347 (7th Cir. 1991); *Hendricks v. Coughlin*, 942 F.2d 109 (2d Cir. 1991); *Vosburg v. Solem*, 845 F.2d 763 (8th Cir. 1988).

9

## 2.    Failure-to-Protect Claim

To establish a failure-to-protect claim, a prisoner must show that he was "incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection." *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995).  The plaintiff need not produce direct evidence of the official's knowledge but rather may rely on circumstantial evidence. *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003).  To survive summary judgment on a failure-to-protect claim, a prisoner is required to produce sufficient evidence of:  1) substantial risk of serious harm, 2) a prison official's deliberate indifference to that risk, and 3) causation.  *Carter v. Galloway,* 352 F.3d 1346 (11th Cir. 2003) (citation omitted); *see also Radick v. Hardiman*, 588 F. Supp. 932 (S.D. Tex. 1984) (deliberate indifference to violent prisoner attacks against other prisoners gives rise to liability for violation of Eighth Amendment rights); *West v. Rowe*, 448 F. Supp. 58 (1978) (when a prisoner's repeated requests for help place appropriate officials on notice of a life-endangering situation, a constitutional duty of care arises binding such officials to take reasonable measures to ensure that prisoner's safety).  This court recognized that "an individual who divulges secret information about his gang might be a target of violence by fellow gang members," and therefore may have a failure-to-protect claim. *Adames*, 331 F.3d at 514-515 ("[A] prison official acts with deliberate indifference if he helps create a risk to an inmate's health or safety.").  To raise a fact issue, this court required the plaintiff to show that the defendant "was aware of facts that could lead him to infer that . . . gang members had learned about the conversation between" the defendant and the plaintiff-informant.  *Id.*

Here, White asserts that:  1) Major Fox told Barnes that White had provided incriminating information against Barnes; 2) prisoners at the Darrington Unit learned that White was a snitch from prisoners at the Michael Unit; and 3) White was assaulted at the Darrington Unit shortly thereafter. White supported his assertions with affidavits sworn to under the penalty of perjury by two prisoners, Barnes and Frazier.  On March 17, 2003, Barnes first attested that:

> On March 5th I was called to the front office on Michael Unit by Major Fox, on this day he tells me that inmate Dexter White and another inmate Valentine had wrote statements against me concerning security keys.  I told the major at this time I did not know either inmate.  This is a very serious matter, especially being behind bars.  ("Barnes' First Statement").

In addition to Barnes' First Statement, Barnes wrote a letter to White dated March 27, 2003 – 10 days later – which was "Received April 1, 2003" and stated (as transcribed by the magistrate judge):

> Well, I'm going to rewrite my legal work for you again. I was taken to the major's office and was told I was getting a case for writing to you or as the major said, I had lied to him about you.  I told him the truth, I didn't know you before he put me on 11 Building, right beside you for two weeks, plus you are only doing my legal work for me.  The major said you are the one who put me in here, starting four months ago.  I don't even know why I tried to argue with him.  How can he talk about someone lying. You know, and I know, we didn't know each other before 11 Building just a few weeks ago.  He had the letter I had wrote to you about my Step One on my case, with the grievances I signed.  Said you are getting a transfer for the help you have provided. Well looks like you got what you wanted if that's the case, but Dexter I know better, you didn't know me four months ago and I didn't know you, so I need this legal work, I don't know how to do it.
>
> I'm going to explain once again what all took place plus sign the grievances.  The major can't take any more from me, when the craft shop stuff is gone they don't need to ever be coming around.  Ho!  I should have a lawyer from Palestine by next week.  Also tell Rick the major said that

Dwight Rawlinson was a friend of his and he wasn't going to help me. I know that is a lie too, that man can only see out of one eye and has 10% only in it because of those people, he hate TDC for what they did. Plus I'm not going to stop until the truth comes out, either they can get it or I'm going to get help for them to get it right. I'm not going to allow no one to set me up and I don't do nothing about it.

*White*, 2010 U.S. Dist. LEXIS 20433, at *17-18 ("Barnes' Second Statement").

In support of Major Fox's summary judgment motion, he stated, in relevant part, in his affidavit that:

I was a Major employed at the Michael Unit in Tennessee Colony, Texas. As Major I was the ranking officer in charge of all general population offenders assigned to the Michael Unit.

Offender White alleges I was deliberately indifferent to his safety when I falsely labeled him a snitch and had him transferred to another unit where he was subjected to violent assaults. However, at no time did I label White a 'snitch.' Snitch is a negative slang term offenders use to describe an informant, TDCJ uses the term confidential informant. *Contrary to White's allegations* I never used him as a confidential informant or labeled him as one. I prefer not to use confidential informants and can only recall two instances where I ever used one in all my years with TDCJ. Neither informant was Offender White. Further, I have never told anyone I was using Offender White as a confidential informant.

White also claims that being a 'snitch' was the reason he was assaulted at the Darrington Unit. However, I have not contact with any of the officers or offenders housed at the Darrington unit which is in Rosharon, Texas about two-hundred miles from the Michael Unit. At no time did I inform anyone at the Darrington Unit that Offender White was a snitch. I do not why or even if, he was assaulted at the Darrington Unit.

(Emphasis added.) The magistrate judge granted summary judgment because she found that Barnes' statements were unpersuasive and relied on inadmissible hearsay. To the contrary, Barnes' First and Second Statements indicate that,

as White alleged, Major Fox said to Barnes that White had provided incriminating information to Major Fox against Barnes. In addition, White testified at the evidentiary hearing that Major Fox placed White's life in danger by telling Barnes that White was an informant. Therefore, at a minimum, Barnes' statements and White's testimony and allegations contradict the affidavit submitted by Major Fox, thus creating a genuine dispute of material fact. Fed. R. Civ. P. 56(a).

Furthermore, the magistrate was in err when it disregarded as hearsay Barnes' statement that Fox told Barnes that White was a snitch. First, by definition, Fox's statement was non-hearsay as it constitutes a party-opponent admission. *See* Fed. R. Evid. 801(d)(2)(A). Second, Fox's statement was not necessarily offered for the truth of the matter asserted–it was not offered to *prove* White was a snitch. Instead, it was offered to show the effect on the listener–it was offered to prove that whoever heard White was a snitch *believed* that he was a snitch, and, therefore, wanted to harm him. *See Faulkner v. Super Valu Stores*, 3 F.3d 1419, 1434 (10th Cir. 1993). Thus, it did not matter whether White was a snitch. It only mattered that Fox made a statement that caused others to believe White was a snitch. Accordingly, the magistrate erred when it disregarded Barnes' statement as hearsay.

Likewise, the magistrate judge disregarded Frazier's affidavit, which expresses that Frazier overheard a prisoner at the Darrington Unit state that he learned from prisoners at the Michael Unit that White was an informant:

> On or about August 29, 2004, I was in the chow line at the Darrington Unit, and I overheard offender Laven tell two of his homeboys that, "I got a letter from the homies on Michael, and there is a snitch named Dexter White over here now-I'm going to smash his snitching-bitch-ass good."

> I advised Dexter [White] of this fact, and he tried to get some assistance from the Unit administration - to no avail.

13

The magistrate judge considered Frazier's affidavit "nothing beyond sheer speculation." At a minimum however, Frazier's affidavit provides a link between Major Fox's alleged statement to Barnes and the location of White's alleged attack. The magistrate judge also discounted Frazier's affidavit because the affidavit was executed in 2010, approximately six years after Frazier heard the prisoner's statement, and ultimately determined that Frazier's affidavit was "too remote and speculative to stand as viable opposition" to Major Fox's summary judgment motion. However, that is basically a credibility determination, which should not factor into summary judgment. *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997) ("The presiding judge is not to weigh the evidence nor engage in credibility determinations.") (citing *Anderson*, 477 U.S. at 248-49). Indeed, the length of time between the incident and the affidavit is not a legal basis to completely disregard it on summary judgment.

The magistrate judge also found that Frazier's affidavit was not based on Frazier's personal knowledge. Fed. R. Civ. P. Rule 56(c)(4) ("An affidavit or declaration used to support or oppose a motion *must be made on personal knowledge*, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.") (emphasis added). However, the affidavit does contain Frazier's assertion that he heard another Darrington Unit prisoner state that Michael Unit prisoners considered White to be an informant and that he intended to assault White.

Construing "all facts and inferences in the light most favorable" to White, *see Dillon*, 596 F.3d at 266, he produced evidence (Barnes' First and Second Statements) that contradicted Major Fox's statement that he did not tell anyone that White was a snitch. White also produced evidence (Frazier's affidavit), which connects the snitch label from the Michael Unit and the subsequent assault at the Darrington Unit. If Major Fox informed another prisoner that

14

White acted as an informant, then whether Major Fox acted with deliberate indifference to White's safety by creating a risk of assault is a question for the fact-finder. *See Adames*, 331 F.3d at 510-15 (analyzing a claim that a prison official acted with deliberate indifference by informing prisoners that another prisoner provided incriminating information).

When reviewing the evidence most favorably toward White, it is clear that he has produced sufficient evidence of:  1) substantial risk of serious harm, 2) Major Fox's deliberate indifference to that risk, and 3) causation.  Those alleged events occurred in rapid succession.  White was allegedly assaulted on September 20, 2004.  Thus, the alleged assault occurred shortly after August 2004, when Frazier's affidavit indicates that he heard another prisoner state that he had learned from prisoners at the Michael Unit that White was an informant and that the prisoner planned to assault White.  White received treatment for his injuries, which included facial trauma, on September 22 and October 29, 2004.  *See Estelle v. Gambelle*, 429 U.S. 97, 103-04 (1976) ("An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met."); *see also DeShaney*, 489 U.S. at 198-199 ("[B]ecause the prisoner is unable by reason of the deprivation of his liberty to care for himself, it is only just that the State be required to care for him.") (citing *Estelle*, 429 U.S. at 103-04).  Given Barnes' statements and Frazier's affidavit, which contradict Major Fox's affidavit, there is a genuine dispute of material fact.

### III. Conclusion

The judgment of the magistrate judge is AFFIRMED with respect to White's due process claim against Captain Taylor, and REVERSED and REMANDED with regard to White's failure-to-protect claim against Major Fox for further proceedings consistent with this opinion.   IT IS FURTHER

15

ORDERED that White's motion for imposition of sanctions, to strike Major Fox's and Captain Taylor's briefs, and for costs is DENIED. *See* Fed. R. Civ. P. 11(c)(5)(A).

REAVLEY, Circuit Judge, dissenting:

I would affirm, because there is nothing in the record to raise an issue that Major Fox was consciously indifferent to White's safety by telling another prisoner that White was a snitch or confidential informant. The prisoner Barnes said that he was told by Major Fox that White and another prisoner had made statements against Barnes. That means Major Fox was investigating some conduct of Barnes and had revealed that White had written something adverse to the facts as claimed by Barnes. We have nothing more. That does not say Major Fox was dishonest and actually labeled White as a snitch.